**IN THE COURT OF APPEALS OF IOWA**

No. 15-1803
Filed February 24, 2016

**IN THE INTEREST OF M.H., R.H., L.H., AND C.H.,**
**Minor Children,**

**D.H., Mother,**
**Appellant,**

**R.H., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Johnson County, Deborah F. Minot, District Associate Judge.

Parents appeal an order placing four children in the custody of the Iowa Department of Human Services. **AFFIRMED ON BOTH APPEALS.**

Rachel Antonuccio of Iowa City Public Defender's Office, Iowa City, for appellant mother.

John W. Pilkington of Nidey, Erdahl, Tindal & Fischer, P.L.C., Marengo, for appellant father.

Thomas J. Miller, Attorney General, and Bruce Kempkes, Assistant Attorney General, for appellee State.

Anthony A. Haughton of Linn County Advocate, Inc., Cedar Rapids, for minor children.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

Parents appeal an order placing four children in the custody of the Iowa Department of Human Services.  They argue the district court erred in (A) "taking statements [from one of the children] in chambers outside of the parents' and their attorneys' presence"; (B) "not sequestering [the child who testified] or allowing [them] to call her as a witness at the continuation of the modification trial"; (C) "denying [their] joint motion in limine and allowing evidence and testimony regarding [two children] who were not subject to the State's application before the court"; (D) "ruling that [the department] provided reasonable efforts" toward reunification; and (E) "modifying the [child-in-need-of-assistance] dispositional order and violat[ing] [their] due process rights when it denied [them] access to the 75-pages' of [court appointed special advocate] reports that formed the basis for the state's motion for modification."

## I.    *Background Facts and Proceedings*

The parents adopted six children with special needs.  In time, the State filed a child-in-need-of-assistance petition based on "the parents' troubling disciplinary strategies and methods," together with other factors.  The parents stipulated to an adjudication of the children as in need of assistance and agreed to comply "with the services necessary to provide for the continued safety and welfare of" the children.

The district court adjudicated all six children in need of assistance.  The court subsequently entered a dispositional order stating the youngest four (born in 2001, 2002, 2003, and 2006) would "remain in the custody of their mother,

under the protective supervision of the" department. The court further found the department "made reasonable efforts to maintain the family."

Ten months after the child-in-need-of-assistance petition was filed, the State moved to modify the disposition, citing an open child abuse investigation, the parents' refusal to allow private conversations between department employees and each of the children, and other circumstances. The parents responded by noting the child abuse investigation was unconfirmed, they complied with the safety plan, and they wished to have the four children remain in their home.

Before a hearing on the State's motion, the court appointed special advocate (CASA) filed detailed reports highlighting harsh disciplinary measures taken by the parents. She recommended removal of the four children from the home. The reports were sent to the parents' attorneys but not the parents.

The attorneys filed a joint motion seeking permission to disseminate the CASA reports to the parents. They asserted that they had "not shared copies of the reports with the parents" but had attempted to summarize the CASA's concerns and recommendations for the parents' response." They noted limits to "their ability to effectively summarize the reports for the parent." The district court denied the motion. The court cited the parents' use of the summarized information to inappropriately confront the children and explained this was "unacceptable" and placed the children "in a terrible position."

The parents also filed a motion in limine seeking to exclude evidence relating to the two oldest children, who were not in the home. The district court denied the motion, reasoning there was "specific case law that talks about

parenting of other children being relevant in the Court's decision about all the children in the family."

The modification hearing spanned three days over three months. On the first day, the oldest of the four children testified in open court and minimized disciplinary concerns raised in the CASA report. At the end of the morning, the child expressed a desire to speak to the judge privately. The judge agreed to do so, subject to a court reporter's presence and transcription of the proceedings. The judge denied the request of the parents' attorneys to be present during the in-chambers conversation with the child.

In response to questions posed by the court, the child essentially recanted her earlier testimony and provided a detailed account of her parents' harsh disciplinary methods. In light of her statements, the district court informed the parents' attorneys that the children would be removed from their parents' custody following the lunch break and, to protect them in the interim, the attorneys were not to tell the parents of the court's intentions. The court returned to open court after the lunch break and announced the ruling. The court subsequently entered a removal order and postponed the balance of the modification hearing.

In the interim, the parents filed a motion for an order requiring the department to make reasonable efforts toward reunification. They also sought a transcript of the statements the child made in chambers. The court delayed ruling on the reasonable efforts motion until the conclusion of the modification hearing and granted the request for a transcript.

On the second day of the modification hearing, the mother's attorney pointed out that the child who testified on the first day was present in the

courtroom. The attorney said she initially did not intend to call the child as a witness, but "since she's here," she "might." The district court responded, "I'm not going to allow that today . . . I'll hear you on it later." The court reasoned, "[I]f you wanted to call her, you should have notified her attorney and you should have subpoenaed her. I'm not going to have this child subjected to questioning because she exercised her statutory right to attend this hearing today."

After the final two days of testimony, the court found that the department made reasonable efforts to prevent removal. The court acknowledged a delay in the provision of services after removal "due to the unexpected absence of" the department employee assigned to the case but stated, "[S]ince then [the department] has made reasonable efforts to work toward the goal of returning the children." The court modified the original dispositional order to transfer custody of the four children to the department.

Both parents appealed. While conceding they "cannot assert arguments on the others' behalf," they divided the issues to be argued and joined in each other's arguments. Although their approach is unorthodox, we agree their positions were aligned in the district court and are aligned on appeal and the parents should be treated "as one unit" for purposes of the opinion.

## II. Analysis

### A. Attorney Exclusion from In-Chambers Questioning

The parents argue their attorneys should not have been excluded from the in-chambers questioning of the child. They have the law on their side.

Iowa Code section 232.38 (2015) authorizes a court to "temporarily excuse the presence of the parent, guardian or custodian when the court deems

it in the best interests of the child." But, the provision goes on to state, "Counsel for the parent, guardian or custodian shall have the right to participate in a hearing or proceeding during the absence of the parent, guardian or custodian." Iowa Code § 232.28(2). Fundamental fairness undergirds this provision. The parents—facing loss of their children—were entitled to have their representatives hear the evidence as it came in. They were deprived of this right.[1] The district court violated section 232.28(2) by excluding the parents' attorneys from the in-chambers proceeding.

The State responds with two arguments. First, the State asserts, "[T]he juvenile court relied upon [the child's] in-chambers statements for the sole purpose of removing the children from the home" and, because this order was superseded by the modification order, the presence-of-counsel issue became moot. Second, the State argues the removal of the attorneys was non-prejudicial because the district court did not rely on the child's statement in modifying the disposition and there was other evidence which required modification. We turn to these responsive arguments.

With respect to its mootness contention, the State relies on *In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994). There, the Iowa Supreme Court faced a challenge to a juvenile court's ex parte temporary removal order, which was followed by a dispositional hearing and order. *See A.M.H.*, 516 N.W.2d at 871.

---

[1] The parents also contend their exclusion from the proceeding amounted to a due process violation. Their constitutional due process claim was not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Their assertion that their attorneys' exclusion from the in-chambers discussion not only violated the letter of the statute but also was fundamentally unfair was preserved for our review.

The court declined to address the challenge to the temporary removal order, finding the issue "moot." *Id.* The court reasoned that "[a]ny error committed in granting the temporary ex parte order cannot now be remedied. We cannot go back in time and restore custody based on alleged errors in the initial removal order." *Id.* This court has relied on *A.M.H.* in finding a challenge to a temporary removal order moot. *See In re R.E.*, No. 10-1480, 2010 WL 4867960, at *1 (Iowa Ct. App. Nov. 24, 2010); *but see In re B.E.*, No. 15-0794, 2015 WL 4652606, at *5 (Iowa Ct. App. Aug. 5, 2015) (noting the father timely moved to dismiss the matter, whereas in *A.M.H.,* the parent raised the procedural challenge "after the fact"). We need not resolve the mootness question here because the parents' focus is on the modification order rather than the temporary removal order.

We proceed to the State's prejudice argument which, as noted, has two prongs. First, the State asserts the district court did not rely on the child's testimony in modifying the disposition, and, accordingly, it is unnecessary to address the attorney exclusion issue in this context. We believe the State reads the modification order too narrowly. Although the court failed to cite the child's statements in its conclusions, the court provided a detailed summary of the statements in the factual portion of the order and expressed "shock" at the child's "disclosures, the fear and apprehension she displayed, and the extent to which she was willing to go to protect herself and her younger siblings from what she perceived would be drastic consequences of the court hearing." We conclude the court relied on the child's statements in modifying the disposition.

The second prong of the State's prejudice argument—that the modification order is supported by evidence other than the child's statements—is more

persuasive. As noted, the court admitted CASA reports. In one of them, the advocate summarized a conversation she had with the child who testified. The child disclosed manipulative and controlling actions on the mother's part. These disclosures mirrored the statements the child made in chambers.

The State also elicited testimony from a school nurse, who expressed concerns with the father's harsh discipline of one of the children, as recounted by the child. The nurse also described the same child's fear of the mother's reaction should she learn of his disclosures to the nurse. Finally, the nurse described the child's expression of relief concerning a previous hospitalization, because it allowed him to get away from the home.

A service provider who supervised visits also testified. She recounted statements two children made about the discipline meted out by the parents. According to them, one child was punched in the face, receiving a black eye, and had his face slammed to the floor.

In the same vein, the department case manager summarized statements a child made to a school counselor about being locked out of the home. In addition, she described shaming techniques used by the mother on one of the two oldest children.

We conclude the district court's exclusion of the attorneys from the in-chambers discussion with the child was non-prejudicial because the same evidence entered the record through other sources.

### B. Failure to Sequester Child and Allow Child to Testify

On a related front, the parents argue they were "denied their right" to cross-examine the child "regarding the statements she made in private to the

court." They focus on the district court's refusal to allow the child to be called as a witness during the reconvened open-court hearing.

As discussed, the mother's attorney suggested she "might" call the child as a witness because the child happened to be present at the hearing. The court foreclosed this option, given the absence of prior notice to the child's attorney but explicitly left the door open for a future request. The parents did not make another request to have the child testify. Accordingly, they waived error on this issue. *See Meier*, 641 N.W.2d at 537 ("[I]ssues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

### C.    Admission of Evidence Relating to Oldest Two Children

As noted, the district court denied the parents' motion to exclude evidence concerning the oldest two children. The parents contend the court's ruling was erroneous because those children "were not in the home during the course of th[is] [child-in-need-of-assistance proceeding] and were not the subject of the State's [m]otion to [m]odify [d]isposition."

As the district court noted, our courts have allowed evidence relating to the welfare of siblings not a subject of the current proceeding. *See In re D.D.*, 653 N.W.2d 359, 362 (Iowa 2002) ("[O]rdinarily, all siblings are at risk when one child has been sexually abused."); *In re A.R.*, No. 08-1520, 2008 WL 5412313, at *3 (Iowa Ct. App. Dec. 31, 2008) (citing evidence that sister not a subject of proceeding was sexually abused).

In this case, the parents stipulated to an adjudication of all six children as in need of assistance, the court adjudicated all six children in need of assistance, and the court entered a dispositional order involving all six children. While the

State's motion to modify the disposition only involved the four children still in the home, this fact does not render evidence relating to the oldest children irrelevant or unfairly prejudicial. *See* Iowa Rs. Evid. 5.401; 5.403. We conclude the district court did not abuse its discretion in permitting evidence relating to the oldest two children. We affirm the court's ruling on this matter.

### D. Reasonable Efforts

The department must make reasonable efforts to reunify families. *See In re C.B.*, 611 N.W.2d 489, 493-94 (Iowa 2000). The district court found that the department satisfied this obligation. On our de novo review, we agree.

The department provided a variety of services before and after the children were removed. We recognize certain key services such as visits with the parents were suspended for a period of time and parental notification of some services was delayed. But the department had cogent explanations for both events. The department employee explained that the visits were suspended because contact "seemed to trigger acting out" by the children. Notably, when one of the children sought to have the visits resumed, the department made the necessary arrangements. The department also facilitated a visit with a child who was placed in institutional care. As for the delay in parental notification of certain services, the employee stated she was forced to take emergency sick leave for over a month. Notwithstanding this absence, the department arranged for family therapy, as requested by the parents. This service was in addition to the large number of psychiatric services afforded the children. Under these circumstances, we conclude the department satisfied its reasonable efforts mandate.

***E.*** ***Error in Modification Order and Parental Access to CASA reports***

The parents contend the district court's refusal to permit dissemination of the CASA reports to the parents adversely affected their ability to defend the allegations in the modification proceeding, in violation of due process. Again, the parents failed to preserve their constitutional due process claim for review. Accordingly, we will confine our discussion to whether the court acted in consonance with our child welfare statute.

Iowa Code section 232.89(5) states a CASA appointed by the court

shall submit a written report to the court and to each of the parties to the proceedings containing results of the court appointed special advocate's initial investigation of the child's case, including but not limited to recommendations regarding placement of the child and other recommendations based on the best interest of the child [and] shall submit subsequent reports to the court and parties.

Based on the statute's reference to "parties," we conclude the court was obligated to disseminate the reports to the parents.

That said, we discern no prejudice from the violation because the parents' attorneys had the reports, informed the parents of the contents, and elicited testimony from them refuting many of the CASA's assertions. Accordingly, we affirm the district court's ruling.

We affirm the district court's modification of the dispositional order to place custody of the four children with the department.

**AFFIRMED ON BOTH APPEALS.**