# IN THE COURT OF APPEALS OF IOWA

No. 22-1212
Filed December 7, 2022

**IN THE INTEREST OF C.M. and F.M.,**
**Minor Children,**

**T.M., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Monroe County, William Owens, Associate Juvenile Judge.


A mother appeals following the entry of a dispositional order in a child-in-need-of-assistance proceeding. **AFFIRMED.**


Julie De Vries of De Vries Law Office, PLC, Centerville, (until withdrawal) and T.M., Albia, self-represented appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Kevin S. Maughan, Albia, attorney and guardian ad litem for minor children.


Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

A mother appeals the removal of her children from her custody, the children's adjudication as children in need of assistance (CINA), and the juvenile court's dispositional order continuing their placement out of their mother's custody. The mother contends the children could safely be returned to her custody or, in the alternative, her adult daughter could live with her and the children. She also claims the Iowa Department of Health and Human Services (DHHS) has not provided reasonable efforts to reunite the family. We affirm.

**I.      Background Facts & Proceedings**

DHHS became involved with this family on January 5, 2022, following reports of the mother's drug use and failure to supervise the two children—C.M., age fourteen, and F.M., age ten. A child-protection worker (CPW) with DHHS attempted to speak to the mother at her home on January 10 but could not make contact. As a result, the report was modified from a family assessment to a child abuse investigation.

The mother eventually met with DHHS at the DHHS's offices on January 12. She denied all allegations. Later that day, the CPW attempted to inspect the mother's home but was denied entry. The mother relented three hours later. The CPW noted behavioral indicators of drug use by the mother. No drugs were found in the home. The mother failed to participate in family preservation services the next day. She provided a hair sample positive for methamphetamine and amphetamines. The CPW testified that the mother's methamphetamine levels were consistent with drug use multiple times a day.

The children were removed on January 18 and placed in separate foster placements. The State filed a CINA petition on January 24. The removal was confirmed by the juvenile court on January 31. The children were adjudicated CINA on May 1, 2022, pursuant to Iowa Code section 232.2(6)(c)(2) (2022). A dispositional hearing was held June 13. Following the dispositional hearing, the court continued the children's out-of-home placements. The mother appeals the removal order, the adjudicatory order, and the dispositional order.

## II.     Standard of Review

"We review CINA proceedings de novo. In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight. Our primary concern is the children's best interests. CINA determinations must be based upon clear and convincing evidence." *In re J.S.*, 846 N.W.2d 36, 40-41 (Iowa 2014) (internal citations omitted).

## III.    Removal Order

The mother claims removal was improper because the State did not establish removal was necessary for the children's welfare. *See* Iowa Code § 232.95(5)(a). She also contends the State did not make reasonable efforts to eliminate the need for removal. *See id.* But after the ex parte removal of the children and subsequent removal order, the juvenile court entered a dispositional order on July 5 placing custody of the children with DHHS. Once a court enters a dispositional order, "[w]e cannot go back in time and restore custody based on alleged errors in the initial removal order." *In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994). As such, the claims concerning the initial removal are moot. *See id.*

## IV.    CINA Adjudication

The mother contends there was not clear and convincing evidence to support adjudicating the children as CINA.  The juvenile court found the children were CINA pursuant to Iowa Code section 232.2(6)(c)(2).[1]  A juvenile court may find a child to be in need of assistance when "[t]he child has suffered or is imminently likely to suffer harmful effects as a result of . . . the failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child."  Iowa Code § 232.2(6)(c)(2).  That finding is appropriate "when there was harm to a child's physical, mental, or social well-being or such harm was imminently likely to occur."  *J.S.*, 846 N.W.2d at 42.

We determine on this record that clear and convincing evidence supports the court's determination.  The mother tested positive for methamphetamine in January at levels that the CPW testified indicated drug use multiple times a day.  One of the children informed a provider that the child witnessed the mother use methamphetamine.  One of the children also reported to DHHS that the child had found needles and a clear substance in a bedroom within the family home.  Using methamphetamine undermines the parent's ability to supervise the children.  *See State v. Petithory*, 702 N.W.2d 854, 858 (Iowa 2005) (describing how those using methamphetamine are unavailable to supervise children during both the initial high after consuming the drugs and once they crash and sleep for hours).  Additionally, our supreme court has noted that "methamphetamine addiction by itself can result in 'harmful effects' to the child.'"  *J.S.*, 846 N.W.2d at 37.  We also note that at the

---

[1] That section has since been moved by legislative amendment to Iowa Code section 232.96A(3)(b).  *See* 2022 Iowa Acts ch. 1098, § 33 (effective July 1, 2022).

time of the CINA hearing, the mother had not attempted the recommended substance-abuse treatment.

F.M. also informed the CPW that the mother sometimes leaves the children alone overnight. While one of the children was about fourteen at the time, DHHS doubted her ability to spend extended time alone safely because of problems the child has encountered with juvenile delinquency services and at school.[2] While the mother disputes the allegation of leaving the children home alone, the juvenile court was better placed to gauge witness credibility. The drug use and lack of supervision and supports the juvenile court's finding that the children were at an imminent risk of harm. The children were properly adjudicated to be children in need of assistance.

## V. Dispositional Order

The mother raises several claims related to the dispositional order. First, she claims the State did not undertake reasonable efforts to reunite the family. She also claims that the court did not order the least restrictive placement available. And she argues the court should have dismissed the CINA petition and immediately reunified the family because dismissal is in the best interests of the children.

### A. Reasonable Efforts

As an initial matter, the mother failed to preserve her claims related to reasonable efforts. The mother specifically points to the option of having one of her adult children reside with her and C.M. and F.M. She also generally points to

---

[2] DHHS indicated C.M. was expelled for bringing a gun to school.

an alleged lack of services. However, "if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017). Here, the mother filed a motion for reasonable efforts, but that motion only requested changes to visitation that the court subsequently granted. The mother never objected to any other efforts, or the lack thereof, provided by DHHS. As such, her claim is not preserved.

Even if we were to consider the mother's claims about reasonable efforts, those claims lack merit. First, the mother contends her adult daughter could have lived with her, thereby offering another adult to supervise the children. However, that option would not rectify the mother's substance abuse nor eliminate the real and present danger to the children resulting from living in the same home with drug use by their caretaker. And at the time of the disposition hearing, the mother was "essentially homeless," staying at a friend's home. It is unclear where the adult daughter would stay under the mother's plan.[3] Therefore, contrary to the mother's assertions, it would not have been a reasonable alternative to removing the children from the mother's custody.

Moreover, DHHS provided ample services, including solutions-based casework to address issues with the mother's lack of employment, housing, and transportation; offering a parent-partner for the mother, which the mother cursed at and rejected as a service; and providing drug testing, family preservation

---

[3] The mother requested at the dispositional hearing that an Interstate Compact on the Placement of Children home study be conducted on another adult daughter living in Colorado. The case manager for DHHS testified he was in support of the court ordering this home study.

services, and assistance in facilitating drug and mental-health treatment. Other than financial assistance with gas and obtaining a birth certificate—which the court ordered DHHS to assist with—when asked at the dispositional hearing what services she wanted increased, the mother did not identify any specific programs. We conclude DHHS provided reasonable efforts.

**B.     Reunification**

The mother contends the CINA petition should have been dismissed and the children returned to her custody. As part of this claim, she contends the children do not face a risk of harm under her custody, that their return to her custody is in the children's best interests, and that less restrictive options were available.

A juvenile court can terminate a CINA proceeding in a dispositional order and return the child to their parent's custody under certain circumstances. Iowa Code § 232.103(4). However, these children cannot be safely returned to their mother's custody at present. As noted above, the mother's drug test indicated daily use of methamphetamine. She received a substance-abuse evaluation that recommended outpatient treatment. While the mother testified that she was scheduled to begin the treatment soon, she had not yet started the treatment. And she had not completed a mental-health evaluation or any mental-health treatment. The mother lacks stable housing and employment. She testified that she "would have to wing it" to support the children financially. The children would face significant harm if they were returned to the mother at the time of disposition. While we recognize the hardship removal can cause children, returning to their mother's custody is not currently in their best interests.

Finally, as explained above, the mother's plan of living with her adult daughter does not rectify the danger to the children. Other than that plan, the mother could not explain what viable alternatives would be less restrictive than the children's current placements. We affirm.

**AFFIRMED.**