**IN THE COURT OF APPEALS OF IOWA**

No. 23-1695
Filed January 10, 2024

**IN THE INTEREST OF A.D. and M.T.,**
**Minor Children,**

**A.D., Mother,**
      Appellant.
_____

      Appeal from the Iowa District Court for Lucas County, Eric I. Howe, District

Associate Judge.


      A mother appeals the termination of her parental rights.  **AFFIRMED.**


      Aaron H. Ginkens of Ginkens Law Firm, P.L.C., West Des Moines, for

appellant mother.

      Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

      Shireen L. Carter, Norwalk, attorney and guardian ad litem for minor

children.


      Considered by Greer, P.J., and Ahlers and Buller, JJ.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of a mother to her two children, born in 2011 and 2012. The mother appeals. She challenges the statutory grounds authorizing termination, including whether the Iowa Department of Health and Human Services made reasonable efforts toward reunification; argues termination is not in the children's best interests; requests application of a permissive exception to preclude termination; and argues both her and the children's constitutional rights were violated.

We review orders terminating parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). We give weight to the juvenile court's findings of fact, especially regarding witness credibility, but we are not bound by them. *Id.* Our review follows a three-step process that involves determining if a statutory ground for termination has been established, whether termination is in the children's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). Then we address any additional claims raised by the parent. *In re K.B.*, No. 22-1343, 2022 WL 17481399, at *1 (Iowa Ct. App. Dec. 7, 2022).

As to the statutory grounds, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(e) and (f) (2023). As the mother's rights were terminated on multiple grounds, we affirm if either of the grounds is supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). We choose to focus on section 232.116(1)(f), which

permits termination upon sufficient proof that (1) the child is four years of age or older; (2) the child has been adjudicated a child in need of assistance; (3) the child has been removed from the physical custody of the parents for at least twelve of the last eighteen months; and (4) the child cannot be returned to the custody of the parent. The mother only challenges the fourth element, whether the children could be safely returned to her custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4) ("There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102."); *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing). Following our de novo review of the record, we agree with the juvenile court that the children could not safely return to the mother's custody.

The department became involved with this family after following up on a hotline report claiming the mother was leaving the children alone for extended periods of time. Further investigation revealed that the mother had been arrested for possession of methamphetamine. The juvenile court adjudicated the children as in need of assistance in March 2022 and placed them in the custody of a family friend, under the supervision of the department. A few months later, the family friend had a medical emergency, which the mother used as an opportunity to pick the children up from school and take them to her home without department authorization. When department staff figured out where the children were, a case worker went to pick the children up from the mother's home. The mother argued with the worker and claimed the children had not been removed from her care despite the adjudicatory order confirming their removal. Due to the family friend's

medical issues, the juvenile court changed custody of the children from the family friend to the department.  The children were placed in family foster care as a result.

Shortly after the juvenile court placed the children in the department's custody following the above-described episode, the mother disengaged with services.  Since then, she has not re-engaged in mental-health treatment, and she never successfully completed substance-abuse treatment.  The mother explained to a case worker she would not reengage with services because she felt that she did not need services.

At Thanksgiving time, things took another concerning turn.  The department and the children's guardian ad litem had given approval for the children to travel to the Kansas City area to spend the holiday with their maternal grandmother.  But the children did not turn up at the meeting place to return them to the foster family.  It became necessary to involve multiple law enforcement agencies to locate the children.  The children were found a few days later in a town by the Lake of the Ozarks.  Law enforcement ultimately located the children by pinging the mother's phone to that location.  The officer who located the children believed the mother to be with them because both the mother's paramour and own mother were there, although the officer did not actually see the mother.  The children confirmed the officer's suspicions when they reported their mother was with them while they were missing.  One of the children explained to the social worker that there had been plans for them to travel further south and change their names—presumably to abscond from supervision by the department.  This incident prompted the department to suspend the mother's visits with the children.

Since then, the department permitted about ten virtual visits between the mother and the children. The mother claims she is on an upward trajectory. She testified she is buying a house in Missouri and works as an independent contractor making enough money to support the children and herself. She claimed to have recently completed three substance-abuse evaluations and none of those evaluations recommended any treatment. However, she has not signed any releases so that the department can independently verify her claims. At the time of the termination hearing, the mother had yet to comply with drug testing requests beyond an initial test, which was positive for methamphetamine.

From the record evidence, it is apparent that the mother does not appreciate the barriers to reunification, nor has she meaningfully addressed her substance-abuse issues. Instead of working to resolve safety concerns, the mother has focused on thwarting the department's efforts to serve her family's needs. Most concerning is the mother's involvement in hiding the children at Thanksgiving. The mother's conduct in that regard is not reflective of a parent who can provide the children with safe care.

Yet, the mother invokes the reasonable-efforts mandate, which, while not a strict substantive requirement for termination, requires the State to "show reasonable efforts [toward reunification] as part of its ultimate proof that the child cannot be safely returned to the [custody] of a parent." *In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019). The problem is that the mother does not make a reasonable-efforts argument so much as recite the applicable law relating to reasonable efforts. To the extent the mother claims the department failed to investigate in-state and out-of-state family placement for the children, she does not

explain how that would impact reunification in this particular case. *See In re M.G.*, No. 18-0650, 2018 WL 3912192, at *2 (Iowa Ct. App. Aug. 15, 2018) (explaining reasonable-efforts challenges must be related to services that would eliminate the need for removal). Even so, the department's records show that it contacted several members of the mother's family but could not proceed with considering them for placement because the mother refused to sign the necessary releases. Given the facts of this case, we conclude there was no deficiency in the services provided by the department, and it made reasonable efforts toward reunification. Having reached this conclusion, we find the State has established a statutory ground for termination.

Next, we turn to the mother's contention that termination is not in the children's best interests. When making a best-interest determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). The mother is not a safe caregiver. Her illicit substance abuse is unresolved, and she has two outstanding warrants— one related to an operating-while-intoxicated case and another for violating her probation in a controlled-substances case. We consider the children's disappearance following Thanksgiving to be the mother's attempt to run off with the children, placing them in danger. The children are not safe in her care. Conversely, they are currently in pre-adoptive placement and are integrating into their new family and community well. *See* Iowa Code § 232.116(2)(b) (directing the court, in assessing the children's best interests, to consider "whether the foster

family is able and willing to permanently integrate the child into the foster family"). Termination of the mother's parental rights would facilitate permanency for these children and is in their best interests.

The mother relies on section 232.116(3)(c) to argue her bond with the children should preclude termination. Section 232.116(3)(c) permits the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." This is a permissive exception, and it is the parent's burden to establish its applicability. *In re W.T.*, 967 N.W.2d 315, 322, 324 (Iowa 2021). The mere existence of parent-child bonds is not enough to trigger this exception. *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). Instead, the bonds must be so significant that severing them would be manifestly detrimental to the children. *Id.* The mother has not established bonds of this magnitude. She conceded at the termination hearing that her relationships with the children were strained. Based on that concession and the record as a whole, we decline to apply this permissive exception.

Finally, we address the mother's claim that both her and her children's federal due process rights were violated when the children were removed from her custody. We first note the mother does not have standing to raise claims on behalf of the children.[1] *See In re K.B.*, No. 22-1343, 2022 WL 17481399, at *1 n.1 (Iowa Ct. App. Dec. 7, 2022) (recognizing one party does not have standing to raise issues for another party). As to her claim regarding her own due process rights,

---

[1] The children's interests are represented by their joint attorney and guardian ad litem.

the mother does not explain how she believes those rights were violated, waiving the issue. *See In re E.W.*, No. 22-0647, 2022 WL 2347196, at *2 (Iowa Ct. App. June 29, 2022) (finding an issue waived when the parent failed to develop a supporting argument). We also note that removal of children from their parent for purposes of keeping the children safe does not violate the parent's due process rights. *Lennette v. State*, 975 N.W.2d 380, 394 (Iowa 2022). There is ample evidence here that removal was needed to keep the children safe. And to the extent the mother attempts to challenge the validity of removal of the children from her custody, the issue is now moot. *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) (recognizing errors in the removal process cannot be later remedied and "we cannot go back in time and restore custody based on alleged errors in the initial removal order").

We affirm the termination of the mother's parental rights to her children.

**AFFIRMED.**