# IN THE COURT OF APPEALS OF IOWA

No. 24-0233
Filed May 22, 2024

IN THE INTEREST OF M.D.,
Minor Child,

A.C., Mother,
        Appellant.

_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, Judge.

A mother challenges the removal of her son from her custody and his adjudication as a child in need of assistance.  **AFFIRMED.**

John J. Bishop, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Mackenize Moran, Assistant Attorney General, for appellee State.

Kimberly A. Opatz of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Schumacher, P.J., Ahlers, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**POTTERFIELD, Senior Judge.**

Following the mother's short-term mental-health committal for stimulant-induced psychosis, the juvenile court ordered the removal of the mother's child, M.D.—then six years old—from her custody. A few months later, M.D. was adjudicated a child in need of assistance (CINA) pursuant to Iowa Code section 232.96A(3)(a), (3)(b), and (14) (2023), and the juvenile court confirmed the child's ongoing removal from the mother's custody. The mother appeals, challenging M.D.'s removal and whether the State proved the grounds for adjudication.

"We review CINA proceedings de novo." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight." *Id.*

First, the mother challenges the initial removal of M.D. from her custody, arguing the State failed to prove the need for removal due to an "imminent risk to the child's life or health [that] is greater than the potential harm including but not limited to any physical, emotional, social, or mental trauma the removal may cause the child." Iowa Code § 232.95(6)(a). But as we have held before, any deficiencies in the removal proceedings were rendered moot by the entry of a subsequent dispositional order. *See, e.g., In re J.C.*, No. 11-0002, 2011 WL 648939, at *3 n.1 (Iowa Ct. App. Feb. 23, 2011) ("We hold the dispositional orders . . . rendered moot any issue regarding the child's removal." (citing *In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994))). As "we cannot go back in time and restore custody based on alleged errors in the initial removal order," *In re E.M.*, No. 20-1722, 2021 WL 811135, at *2 (Iowa Ct. App. Mar. 3, 2021), we do not consider this issue further.

Second, the mother challenges the adjudication of M.D. as a CINA. The juvenile court "may enter an order adjudicating the child to be a" CINA "[i]f the court concludes that facts sufficient to sustain the petition have been established by clear and convincing evidence." Iowa Code § 232.96(9). "Clear and convincing evidence . . . means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995). Because "[t]he grounds for a CINA adjudication do matter" and may affect what grounds for termination the State may later rely upon, *J.S.*, 846 N.W.2d at 40, we consider each of the three grounds relied on by the juvenile court.[1]

But first, we review some of the relevant facts and history for this family. The mother was previously involved with the Iowa Department of Health and Human Services and the juvenile court in 2018, after she deliberately drove herself, M.D., and her older child (who is not at issue here) into the river during a methamphetamine-induced psychosis. The mother reported she had been using methamphetamine daily. Both children were adjudicated CINA, and the case remained open until late 2020, with the mother participating in mental-health and substance-use services. The department again became involved in late 2021, after the mother relapsed on methamphetamine, lost her job, and was being evicted. M.D. was again adjudicated CINA, and the case remained open until October 2022. The current case began in October 2023, after the mother's

---

[1] The juvenile court did not specify under which grounds it was adjudicating M.D. Like the mother did in her petition and the State did in its response, we assume the juvenile court granted the CINA petition on each ground alleged.

neighbors called the police to report the mother was acting bizarrely, including attempting to get in a swimming pool while fully clothed and while the air temperature was below fifty degrees. When police arrived, the mother was delusional, asking to speak to Elon Musk and the president on the phone. The mother was transported to a local hospital by ambulance, where she was diagnosed with amphetamine-induced psychosis and placed on a mental-health hold. The older son later reported to department workers that when he went to the home—after the mother was taken by ambulance—he found his, the mother's, and M.D.'s stuff in the bathtub covered with water. To the juvenile court, the mother denied using illegal substances and minimized the incident, describing it as having a panic attack and suggesting the reports of her mental state were overblown. In its adjudication/disposition ruling, the juvenile court found the mother's explanation lacked credibility, ruling:

> [T]o believe [the mother's] explanation of the situation as a harmless, blown-out-of-proportion event, one would need to disregard pages of hospital documentation, the opinion of [the older son] who reported concerns to [a department social worker], with whom he has a long standing relationship, the concerns voiced by her sister . . . who has served as placement and support throughout the previous CINA cases, and her demeanor at the hearings held so far in this matter. . . . [The mother] is well-known to the Court, due to her participation in Family Treatment Court and a second CINA case presided over by the Court. Her behavior and demeanor currently is markedly different than in previous encounters with the Court during a time that [the mother's] mental health was stable.

With these facts in mind, we review the three grounds relied upon for adjudication of M.D.

Under section 232.96A(3)(a), a CINA adjudication requires a determination that "[t]he child has suffered or is imminently likely to suffer harmful effects as a

result of . . . [m]ental injury caused by the acts of the child's parent, guardian, or custodian." "'Mental injury' means a nonorganic injury to a child's intellectual or psychological capacity as evidenced by an observable and substantial impairment in the child's ability to function within the child's normal range of performance and behavior, considering the child's cultural origin." Iowa Code § 232.2(39). Based on our case law, we conclude the mother's use of unprescribed amphetamines and her ongoing mental-health needs make it imminently likely M.D. will suffer mental injury. *Cf. J.S.,* 846 N.W.2d at 42 ("[A] juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care."). The mother's 2018 incident of methamphetamine-induced psychosis put M.D. (and his brother) in grave physical danger when the mother intentionally drove into the river. And experiencing intentional danger at the hands of the mother put M.D. at risk of suffering mental injury. *See id.* at 43 ("Case law supports a liberal interpretation of the phrase 'imminently likely' in the CINA context."). The mother's recent drug-induced psychosis shared similar traits of the 2018 incident, with the mother attempting to submerge herself in cold water and otherwise placing M.D.'s and her older child's stuff under water in the bathtub.

Adjudication under section 232.96A(3)(b) is appropriate when "[t]he child has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." "Typically, an adjudication as a [CINA] pursuant to [now-section 232.96A(3)(b)] involves a parent who inadequately or insufficiently supervises a child due to inability or lack of concern, placing the child at risk of

harm." *In re E.R.*, No. 14-0850, 2014 WL 4937999, at *5 (Iowa Ct. App. Oct. 1, 2014). And here, the mother is unable to safely parent when experiencing psychosis. Without any credible explanation as to why she took amphetamines or more insight into her current mental-health needs, we cannot say the issues the mother experienced are in the past. We agree with the juvenile court that adjudication of M.D. is appropriate under section 232.96A(3)(b).

Finally, under section 232.96A(14), a CINA adjudication requires a determination that "[t]he child's parent . . . suffers from a mental incapacity, a mental condition, imprisonment, or drug or alcohol abuse that results in the child not receiving adequate care or being imminently likely not to receive adequate care." "'[A]dequate care' for a child means meeting the child's essential needs. One of those essential needs is a *safe* home." *In re H.W.*, 961 N.W.2d 138, 144 (Iowa Ct. App. 2021). Based on the facts we have already outlined, we conclude adjudication was also appropriate under this ground.

We affirm the adjudication of M.D. as a CINA pursuant to Iowa Code section 232.96A(3)(a), (3)(b), and (14).

**AFFIRMED.**