In the Interest of A.M.H., A Minor Child,

T.H.H., Mother, Appellant.

No. 93–1172.

Supreme Court of Iowa.

May 25, 1994.

John L. Sandy of Sandy Law Firm, Spirit Lake, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Charles K.

Phillips, Asst. Atty. Gen., and Julie Fillenwarth, Asst. County Atty., for appellee State.

David Forsyth of Forsyth Law Office, Estherville, for minor child.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

The district court, sitting as juvenile court, found A.M.H. a child in need of assistance (CINA) following an adjudicatory hearing. The court placed A.M.H. in the temporary care and custody of the child's maternal grandparents and under the protective supervision of the Department of Human Services (DHS). Later the court issued an ex parte order for removal of the child from the maternal grandparents. Following a hearing this order was confirmed by the court and temporary custody was transferred to DHS for placement in foster care until the dispositional hearing. The court continued the legal custody of A.M.H. with DHS for placement in foster care following the dispositional hearing.

The mother of the child appealed the adjudicatory, removal, and dispositional orders. On review, we affirm.

I. *Background.*

A.M.H. was born on July 17, 1992. Approximately three weeks after the birth of A.M.H. her nineteen-year-old unmarried mother, Tanya, attempted to transfer custody of her child to her parents, Robert and Deanna. She had an attorney prepare a written "transfer of custody" which anticipated her parents would transfer custody of the child back to her at some time in the future. The father of the child was unknown.

On September 8 the assistant county attorney filed a CINA petition. Iowa Code § 232.87 (1991). The petition alleged that A.M.H. was a child in need of assistance as defined in Iowa Code section 232.2(6)(b) and (k).

On October 15 District Associate Judge W.B. MacDonald conducted an adjudicatory hearing on the CINA petition. *See id.*

§ 232.96. A guardian ad litem was appointed by the court to appear for the child. *Id.* § 232.89(2). Also present at the hearing was the child's mother, her attorney, the maternal grandparents and their attorney. The court found, by clear and convincing evidence, that "the mother does, for good cause, desire to be relieved of the child's care and custody." The court entered an order adjudicating A.M.H. a child in need of assistance pursuant to subsection 232.2(6)(k) and custody of the child was placed with the maternal grandparents under the protective supervision of DHS. The court ordered an alcohol, drug, and psychological evaluation of Tanya, a psychological evaluation of the maternal grandparents, a home study, and set a date for the dispositional hearing.

Before a dispositional hearing took place, the assistant county attorney submitted a request to the juvenile court for an ex parte order to retain A.M.H. in shelter care and an application for a hearing on the removal of the child from the grandparents' home. The application gave the following reason for the order: "The child desires to be placed in shelter care. The child's attorney and guardian ad litem makes the request." *Id.* § 232.21(1)(b). District Associate Judge Cameron B. Arnold issued an ex parte order placing temporary care, custody, and control of A.M.H. with DHS. On the following day, March 18, 1993, Judge Arnold conducted a removal hearing. The guardian ad litem testified that he had requested removal after receiving a copy of the DHS dispositional and comprehensive assessment reports which included psychological evaluations of the grandparents and the home study. The reports were identified as exhibits and admitted into evidence without objection.

Following the hearing the court entered a written order which found that

continuation of residence in the home of the grandparents is contrary to the child's welfare, and that placement is in the child's best interests and that reasonable efforts were made to prevent removal from the home, and that it is not appropriate to prevent removal.

The court transferred temporary custody of A.M.H. to DHS for placement in foster care pending the dispositional hearing.

On May 10 and 11 Alternate District Associate Judge Joseph L. Hanson conducted a dispositional hearing. *Id.* § 232.99. On July 8 the court entered a dispositional order continuing custody with DHS. The court stated the hearing was handled informally and that "all parties agree with the recommendation that probation supervision should continue without modification." The court did not make and file written findings as to the reason for the disposition nor did the court make any findings that the disposition was the least restrictive disposition under the circumstances. *Id.* § 232.99(4).

Tanya appealed the dispositional order entered on July 8, 1993, the removal order entered on March 8, and the adjudicatory order entered on October 19, 1992. On appeal she urges her due process rights were violated and that the dispositional order and removal order failed to comply with statutory requirements.

■ Our review of CINA proceedings is de novo. *In re Long*, 313 N.W.2d 473, 482 (Iowa 1981). We review "both the facts and the law, and we adjudicate rights anew." *In re T.A.L.*, 505 N.W.2d 480, 482 (Iowa 1993). "Although we give weight to the factual determinations of the juvenile court, especially when considering the credibility of witnesses, we are not bound by them." *Id.*

## II. *Due Process.*

■ Both the Bill of Rights and the Iowa Constitution provide no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. amends. V, XIV; Iowa Const. art. I, § 9. "[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599, 606 (1982). The right of a parent to companionship, care, custody, and management of his or her children has been recognized as "far more precious ... than property rights ...," *May v. Anderson*, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221, 1226 (1953), and more significant and priceless than "liberties which derive merely from shifting economic arrangements." *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972). "It is not disputed that state intervention to terminate the relationship between [a parent] and [the] child must be accomplished by procedures meeting the requisites of the Due Process Clause." *Lassiter v. Department of Social Servs.*, 452 U.S. 18, 37, 101 S.Ct. 2153, 2165, 68 L.Ed.2d 640, 656 (1981) (Blackmun, J., dissenting). A parent's interest in maintaining family integrity is best protected by the Due Process Clause. *Alsager v. District Court of Polk County*, 406 F.Supp. 10, 22 (S.D.Iowa 1975), *aff'd in part*, 545 F.2d 1137 (8th Cir.1976). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972).

■ Conceding a natural parent has due process rights at parental termination proceedings and that a natural parent would also have due process rights relating to a CINA proceeding, our next consideration is "what process is due" in this particular context. Generally, the fundamental requirement of due process is an opportunity to be heard. *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287, 299 (1970). This may include a right to notice of the hearing, to confront and cross-examine adverse witnesses, to be represented by counsel, to an impartial decision maker, and to a decision based solely on legal rules and the evidence presented at the hearing. *Id.* at 268–72, 90 S.Ct. at 1020–22, 25 L.Ed.2d at 299–301. To demonstrate compliance with the last requirement, "the decision maker should state the reasons for his determination and indicate the evidence he relied on." *Id.* at 271, 90 S.Ct. at 1022, 25 L.Ed.2d at 301.

■ We recognize that the nature of the process due in parental rights termination proceedings turns on a balancing of three factors: "[T]he private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." *Lassiter*, 452 U.S. at 27, 101 S.Ct. at 2159, 68 L.Ed.2d at 649; *see also In re*

*K.L.C.,* 372 N.W.2d 223, 226 (Iowa 1985). When considering the private interests at stake, we are mindful that this is not an appeal from a termination of the parent-child relationship. *See* Iowa Code §§ 232.111–.117. Although a CINA proceeding may be the first step toward the termination of fundamental parental rights, "we refuse to equate the consequences of a CINA proceeding with those of parental termination." *In re L.K.S.,* 451 N.W.2d 819, 822 (Iowa 1990). We recognize "the State has a duty to assure that every child within its borders receives proper care and treatment, and must intercede when parents fail to provide it." *In re I.L.G.R.,* 433 N.W.2d 681, 689 (Iowa 1988). As for the procedure required, "[o]ur statutory scheme for protecting the rights of natural parents in termination proceedings was carefully crafted as a legislative response to federal court decisions which held our prior parental termination statutes unconstitutional." *In re A.C.,* 415 N.W.2d 609, 613 (Iowa 1987), *cert. denied,* 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1988). The CINA procedures are part of this statutory scheme.

Clearly, we have a duty to enforce the procedural safeguards contained in Iowa Code chapter 232. Both DHS and the juvenile court have the important function of protecting children who are in need of assistance. However, taking a child away from the care and custody of a parent is of serious consequence. We therefore must carefully observe statutory procedural safeguards. *See In re Hewitt,* 272 N.W.2d 852, 857 (Iowa 1978).

III. *Ex Parte and Removal Orders.*

Tanya challenges the issuance of the ex parte removal order and the subsequent order affirming the removal of A.M.H. from the custody of the maternal grandparents. She urges that (1) the application for shelter care based on the guardian ad litem's request was illegal because the guardian had no authority to act for the eight-month-old child; (2) the application and order were improperly drafted pursuant to Iowa Code section 232.21, a provision relating to delinquency proceedings; and (3) the court failed to comply with the temporary removal procedures provided in Iowa Code section 232.78.

Under section 232.78(1)(b), the juvenile court may enter an ex parte removal order only if the child's immediate removal is necessary to avoid imminent danger to the child's life or health. Tanya urges evidence at the hearing established that the child was healthy and had not been subjected to neglect or abuse. Because the court did not find removal necessary to avoid imminent danger, Tanya urges the court's transfer order was invalid.

■ Statutory authority permits the juvenile court to enter an ex parte order directing a peace officer to take custody of a child before or after the filing of a petition "under this chapter." Iowa Code § 232.78(1). Chapter 232 allows petitions in juvenile delinquency and CINA proceedings. Thus the juvenile court has authority to issue an ex parte order for placement of a child in shelter care provided the circumstances identified in sections 232.21 and 232.78 are present. When the child is already under the jurisdiction of the juvenile court, the court has, in addition, the inherent power to "temporarily, even summarily, remove a child pending a hearing on the modification." *In re R.F.,* 471 N.W.2d 821, 823 (Iowa 1991).

■ However, we need not decide the validity of the ex parte removal order or the order entered after hearing because this issue is moot. Following the removal hearing on March 18, the juvenile court confirmed the prior ex parte order placing temporary custody of the child with DHS and ordered scheduling of a dispositional hearing. The dispositional hearing was scheduled for April 14. Later the dispositional hearing was rescheduled and actually held on May 10 and 11. Custody of the child was placed with DHS under the dispositional order. Any error committed in granting the temporary ex parte order cannot now be remedied. We cannot go back in time and restore custody based on alleged errors in the initial removal order. *In re Meek,* 236 N.W.2d 284, 288 (Iowa 1975); *Tucker v. Marion County Dep't of Public Welfare,* 408 N.E.2d 814, 817–18 (Ind.1980).

## IV. *Dispositional Order.*

Tanya argues on appeal that the juvenile court's dispositional order failed to comply with Iowa Code sections 232.99 and 232.102. Section 232.99 requires the court to make the least restrictive disposition appropriate considering all the circumstances of the case. It also requires that "the court shall make and file written findings as to its reason for the disposition." Iowa Code § 232.99(4). Section 232.102 provides in part:

5. Whenever possible the court should permit the child to remain at home with the child's parent, guardian or custodian. Custody of the child should not be transferred unless the court finds there is clear and convincing evidence that:

a. The child cannot be protected from physical abuse without transfer of custody; or

b. The child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available.

The order shall, in addition, contain a statement that removal from the home is the result of a determination that continuation therein would be contrary to the welfare of the child, and that reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home.

We agree the dispositional order did not contain written findings and statements as required by the statute. Procedural due process rights are therefore implicated. However, these deficiencies were raised for the first time on appeal.

Generally the court trying an issue of fact without a jury, whether by equitable or ordinary proceedings, must find the facts in writing, separately stating its conclusions of law, and direct an appropriate judgment. Iowa R.Civ.P. 179(a). The findings and conclusions may be enlarged or amended and the judgment or decree may be modified upon timely posttrial motion. Iowa R.Civ.P. 179(b). "An overlooked issue, called to the trial court's attention, might be resolved so as to avoid an appeal." *Estate of Grossman v. McCreary,* 373 N.W.2d 113, 114 (Iowa 1985).

Although juvenile proceedings are to be conducted in an informal manner, we have applied rule 179(b) to juvenile court termination proceedings. *In re A.R.,* 316 N.W.2d 887, 889 (Iowa 1982). Similarly, we hold rule 179(b) applies to juvenile court CINA proceedings. By failing to timely file a rule 179(b) motion in juvenile court, Tanya waived both her due process and statutory challenges to the deficiencies of the court's dispositional order.

## V. *Sufficiency of Evidence.*

We have reviewed the record of the adjudicatory hearing and find there is clear and convincing evidence that A.M.H., then three months old, was a child in need of assistance. Tanya admitted she was not ready for a child and had given the child to her parents within two weeks after birth. After telling her parents she wanted the child back, she realized she did not "want a child in [her] life right now." She testified that she had no desire to raise a child and did not think she could raise a child. We find the mother, Tanya, for good cause, desired to be relieved of the care and custody of her daughter A.M.H. *See* Iowa Code § 232.2(6)(k).

Upon our de novo review of the dispositional hearing we find clear and convincing evidence that transfer of custody of A.M.H. to DHS for placement in a foster home is the least restrictive disposition appropriate considering all the circumstances. We find the child is imminently likely to be abused or neglected by her mother or maternal grandparents and an adequate placement is available. Placement of the child with Tanya or her parents would be contrary to the welfare of A.M.H. Reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home with her mother or maternal grandparents.

At the dispositional hearing the juvenile court received three social reports prepared by DHS in March, April, and May 1993. The

court also received a comprehensive assessment of the grandparents, Robert and Deanna, along with a home study and a psychological evaluation of Robert and Deanna. These reports were provided at the direction of the court, received without objection, and supplemented by the testimony of social workers, a family therapist, and chemical dependency workers.

Tanya urges that the juvenile court improperly admitted into evidence her past mental health and treatment records in violation of Iowa Code section 622.10 and evidence of her past juvenile records and files. The court received written reports regarding the psychological evaluation, a diagnostic summary, and a discharge summary of Tanya completed in March of 1992. The records were prepared by the Marian Family Recovery Center where she was admitted pursuant to a court order entered upon her conviction of operating while intoxicated (OWI).

■ In Iowa the juvenile court is authorized to judicially notice the pleadings and exhibits from previous CINA proceedings involving the same child or children. *In re Adkins,* 298 N.W.2d 273, 277–78 (Iowa 1980). Hearsay statements are permitted in adjudicatory hearings in a CINA case. Iowa Code § 232.96(6). Our CINA proceeding involves a two-step procedure and evidence admissible or admitted in the adjudicatory hearing may be considered in the dispositional hearing. *See In re K.F.,* 437 N.W.2d 559, 563 (Iowa 1989). Likewise, "because of the interdependent nature of CINA and termination actions, evidence properly admissible in an adjudicatory proceeding should be accorded the same standard of admissibility in a subsequent hearing on termination pertaining to the same child." *Id.*

■ The health professional-patient privilege in Iowa Code section 622.10 limits the disclosure of confidential communications given in testimony. *McMaster v. Board of Psychology Examiners,* 509 N.W.2d 754, 757 (Iowa 1993). The privilege attaching to confidential communications between a health practitioner or mental health professional and patient is not grounds for excluding evidence at a CINA adjudicatory proceeding. Iowa Code § 232.96(5). Because a CINA

proceeding is a two-step process, the privilege does not exclude the evidence from being admitted at a CINA dispositional hearing.

■ Our appellate rules require each division of an argument state the issue presented and the authorities relied upon. Iowa R.App.P. 14(a)(5). Tanya's brief did not cite Iowa Code section 232.55(2) as an authority. However, *In re T.C.,* 492 N.W.2d 425 (Iowa 1992), is cited and this is sufficient to preserve the issue. In our de novo review we may consider admissible evidence upon the issues presented. *Id.* at 429. The statute does not exclude evidence of convictions entered in criminal proceedings or the admission of social reports prepared for the court in a CINA proceeding. Section 232.55(2) excludes only the admission of evidence of delinquency proceedings.

The reports and testimony establish that Robert and Deanna have a long history of inappropriate parenting. DHS first provided them with services in 1973. The social report provided to the juvenile court must include any founded reports of child abuse. Iowa Code § 232.97(1). Here the report contained a founded report of sexual abuse in 1988 naming Robert the offender and Tanya the victim; a founded report of sexual abuse in 1989 naming James the offender and his sister Tanya the victim; two founded physical abuse reports in 1977 and 1978 naming Robert the offender and Tanya and her brother James the victims; a founded denial of critical care report in 1978 naming Robert and Deanna offenders and their children the victims; and a founded neglect report in 1978 naming Robert and Deanna offenders and their children the victims. Tanya minimized the effects of her physical abuse and denies all reported sexual abuse.

The reports and supporting testimony clearly establish Tanya's troubled personal and family background. She was removed from her parents' home in a 1988 CINA proceeding and placed in temporary foster care for protective reasons. Tanya pled guilty in criminal court to assault with a deadly weapon. She was hospitalized because of threats of self-harm and destructive

behavior. She was placed at the juvenile home in 1990 and remained there until her eighteenth birthday on April 21, 1991. While a juvenile, Tanya underwent two inpatient hospitalization treatments for chemical abuse. In October 1991 she entered a plea of guilty to OWI and was again ordered to undergo inpatient treatment. She was discharged from treatment four months before the birth of A.M.H.

At the dispositional hearing Tanya testified she was living with her parents in a two-bedroom trailer. Also living in the household was her brother James, and her boyfriend Donald. She admitted she was a drug addict and an alcoholic. In October of 1992 she admitted daily consumption of alcohol and use of marijuana and other drugs. At the adjudicatory hearing Robert recommended Tanya be evaluated for drugs because while living at his place she was bringing drugs into the house.

In October 1992 the juvenile court ordered Tanya to receive alcohol, drug, and psychological evaluations. DHS made arrangements for an evaluation at Northwest Iowa Mental Health Center but Tanya did not contact the center for an appointment. In April 1993 DHS scheduled a date for evaluation and personally notified Tanya that she was to receive an evaluation on April 26 so that the results of the evaluation would be available to the court at the dispositional hearing on May 10. Tanya reported to the health center but left after fifteen minutes. She advised the social worker that she had an appointment with a landlady and she did not care if her leaving made the court or the social worker mad.

Tanya told the social worker that she was pregnant again and that her boyfriend, Don, is the father. The social worker urged her to get a signed statement from a licensed medical doctor so that she could receive Title XIX coverage. Tanya also requested financial assistance from the county relief director. She was advised of the requirements for eligibility. At the time of the dispositional hearing she had not taken action to qualify for Title XIX coverage and had refused to comply with the county's requirement that she cooperate with a protective payee. Tanya testi-

fied that, if given custody of A.M.H., she could live with her aunt.

Tanya also advised the social worker that A.M.H.'s father is not one of the three men she initially identified as possible fathers. She insists one of three other unknown men who had raped her is the father.

At the dispositional hearing Tanya testified her boyfriend Don had been arrested for attempted murder and had served six months in the county jail on the charge. He also had two OWIs, one in 1986 and another in 1992. In her opinion he was not an alcoholic.

After a careful review of the entire record we conclude A.M.H. cannot be safely parented by either Tanya or her parents. The dispositional order required Tanya to have a psychological evaluation, secure treatment for alcohol abuse at a halfway house, and cooperate with agencies in an effort to secure assistance from the county and under Title XIX. Under the circumstances we find that continuation of custody with DHS and enforcement of the dispositional order is appropriate. The dispositional order provides Tanya with an opportunity to demonstrate she is able to provide care for her daughter. The facts supporting the court's adjudicatory and dispositional orders have been established by clear and convincing evidence.

**AFFIRMED.**