# IN THE COURT OF APPEALS OF IOWA

No. 20-0833
Filed August 19, 2020

**IN THE INTEREST OF N.C.,**
**Minor Child,**

**STATE OF IOWA,**
        Appellant.

_____

Appeal from the Iowa District Court for Monroe County, William Owens, Associate Juvenile Judge.

The State and the child's guardian ad litem appeal from the juvenile court's dismissal of the child-in-need-of-assistance petition. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellant State.

Julie De Vries of De Vries Law Office, PLC, Centerville, attorney and guardian ad litem for appellant child.

Jonathan Willier, Centerville, for appellee father.

Considered by May, P.J., Ahlers, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**POTTERFIELD, Senior Judge.**

The State filed a petition alleging eight-year-old N.C. is a child in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(b), (d), and (p) (2020). Following a hearing on the petition, the juvenile court dismissed it and ordered N.C. to be returned to the father's care.[1] The State and the child's guardian ad litem (GAL) appealed that order and asked our supreme court to stay enforcement of it pending this appeal. The supreme court granted the motion to stay and transferred the case to us.

Here, the State and GAL challenge the juvenile court's conclusions that there is not clear and convincing evidence N.C. was sexually abused by the father or is imminently likely to be sexually abused by him. *See* Iowa Code § 232.2(6)(d). The State also maintains there is clear and convincing evidence to find the father physically abused or neglected N.C. or is imminently likely to abuse or neglect her.[2] *See id.* § 232.2(6)(b).

---

[1] N.C.'s mother is deceased.

[2] Additionally, the GAL argues the district court abused its discretion when it failed to admit a video of the interview of N.C. at the child protection center (CPC). But there is no indication from the transcript of the CINA hearing that the juvenile court was asked to admit the video of the interview into evidence.

The only exhibit filed by the State before the hearing was a one-page document containing the recommendations made by the Iowa Department of Human Services (DHS) on March 2, 2020. During the hearing, the court indicated that "the narrative report from the Child Protection Center" would be admitted as exhibit 3 once it was filed. A few weeks after the hearing, on May 27, 2020, the State filed "Statement re: State's Exhibit #3," in which it informed the court it "ha[d] not received the document ordered to be filed as exhibit #3." The next day, the court filed its ruling dismissing the CINA petition. The State filed a motion asking the juvenile court to amend and enlarge its ruling later that same day, noting it had just received exhibit 3. The State attached to its motion "[t]he Exhibit introduced as State's Exhibit #3." The State also attached "[a] video of the forensic interview," an affidavit from the child protection worker, and a letter from N.C.'s therapist. In her own motion, the GAL asked the court to consider both the written report from

The State bears the burden to prove CINA allegations by clear and convincing evidence. *Id.* § 232.96(2). "'Clear and convincing evidence' exists when there are no serious or substantial doubts as to the correctness of the conclusions drawn from it." *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (altered for readability). Our review of CINA proceedings is de novo, which means "[w]e review 'both the facts and the law, and we adjudicate rights anew.'" *In re A.M.H.*, 516 N.W.2d 867, 870 (Iowa 1994) (citation omitted). "[O]ur principal concern is the best interests of the child." *L.H.*, 904 N.W.2d at 149.

We first consider whether clear and convincing evidence supports the adjudication of N.C. as CINA under section 232.2(6)(d). Pursuant to section 232.2(6)(d), an unmarried child "[w]ho has been, or is imminently likely to be, sexually abused by the child's parent" is a CINA. "'Sexual abuse' means the commission of a sex offense as defined by penal law." Iowa Code § 232.2(49). Sexual abuse occurs when a sex act occurs between persons and one of those persons is a child. *See id.* § 709.1(3). And "sex act" includes "[c]ontact between the finger or hand of one person and the genitalia or anus of another person, except in the course of examination or treatment by a person licensed pursuant to chapter 148, 148C, 151, or 152." *Id.* § 702.17(3).

the CPC and "the accompanying video link." The court denied this part of the motion to enlarge and amend, noting the "proposed evidence [of the video] was neither offered by the petitioner during the hearing on May 4, 2020, and nor was it mentioned during the petitioner's case in chief." The court also refused to consider the affidavit of the child protection worker, and the letter from the therapist, neither of which was offered into the record.

As the video of N.C.'s interview was never offered into evidence at the hearing and no party asked the court to reopen the record for additional evidence to be admitted, we do not consider the GAL's claim that the district court abused its discretion in refusing to consider the video of the interview.

Here, eight-year-old N.C. alleged she was sexually abused by her father to at least four people. It appears she initially told someone at her school, and that person contacted DHS.[3] The same day, the child protection worker and a police officer met with N.C. at her school. N.C. told them that the year before, while her dad was cuddling with her, he touched her private parts. N.C. later clarified private parts meant where her bladder is.

N.C. was interviewed at a CPC three days later. During that interview, N.C. reported that her father touched her on the skin of her vagina with his hand. She indicated this happened one time on the couch in the living room and one time in her bed. She gave details, reporting she was wearing a skirt and her father asked her to take it off. She also told the CPC interviewer that the father showed her more than one video of people without their clothes on.

The father generally denied the allegations of sexual abuse. But he told the child protection worker that he cuddled N.C. a lot and that he—according to the social worker's report—"showed [N.C.] a video of the birds and the bees because she had gotten a boyfriend." He said the video "scared" N.C., so he shut it off.

We acknowledge the juvenile court's concerns regarding the ability to determine the credibility of N.C.'s allegations since the court only heard about N.C.'s statements to the four people from the child protection worker—never from N.C. herself or anyone else to whom N.C. spoke. But N.C. consistently reported her father touched her vagina—albeit not in those words. *See In S.J.M.*, 539

---

[3] The child protection worker could not testify as to who N.C. initially told, and the information is not in the worker's report. We assume N.C. told someone at her school, as DHS received the initial allegation at 11:00 a.m. on a school day and then the worker met with N.C. at her school later the same day.

N.W.2d 496, 500 (Iowa Ct. App. 1995) (finding sufficient evidence to support adjudication where child was "consistent in relating events to others," among other things). And there is no evidence she recanted the allegations. *See In re M.L.-H.*, No. 14-1227, 2015 WL 576552, at *2 (Iowa Ct. App. Feb. 11, 2015) (affirming adjudication of child on finding of sexual abuse even after child recanted allegations). The father, though generally denying the allegations of sexual abuse, corroborated some of N.C.'s statements when he told the social worker he cuddles N.C. a lot and admitted to showing her some type of video about "the birds and the bees." And while we have no indication the father admitted the video was pornographic in nature, he did report that it "scared" N.C. Based on all of the foregoing, we find N.C.'s allegations to be credible.[4]

Because we find N.C.'s allegation that the father touched her vagina with his hand to be credible, there is clear and convincing evidence N.C. was sexually abused by the father. *Cf. State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) (affirming the criminal conviction of defendant for sexual abuse, upon which a higher standard of proof is required, because "the alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt"); *see also In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016) (noting the State's burden in child-welfare cases is to prove its case by "clear and convincing evidence," which

---

[4] The juvenile court never explicitly made any credibility findings. In its ruling, the court noted it was "unfortunate" it did not have the forensic report, stating, "That report would typically include a video and audio recording of [N.C.] describing her version of the allegations. As that information is unavailable or unattainable the juvenile court is not afforded an opportunity to independently assess the credibility of [N.C.'s] report." And the court concluded, "There is certainly some evidence— perhaps a preponderance of evidence—that [the father] sexually abused, or is imminently likely to sexually abuse [N.C]."

"is more than a preponderance of the evidence and less than beyond a reasonable doubt").  Additionally, we find the allegation he showed her pornographic videos credible and conclude it was imminently likely N.C. would be sexually abused by her father.  *See L.H.*, 904 N.W.2d at 150 (noting "we liberally interpret the phrase 'imminently likely' in CINA cases" because "[c]hild protection statutes are designed to prevent probable harm to the child"); *see also State v. Mayes*, No. 19-0252, 2020 WL 2060306, at *5 (Iowa Ct. App. Apr. 29, 2020) ("[T]o suggest there is a non-sexual reason to show a pornographic video to a child defies logic."); *cf. In re D.D.*, 653 N.W.2d 359, 360–61 (Iowa 2002) (finding child "imminently likely to be sexually abused" where father admitted he, while wearing swimming trunks, got into bathtub with her daughter and her friend and had physical contact with children).

There is nothing more in the record than a passing statement that N.C. alleged the father hit her in the face with "a shoe, a belt, [and] his hand" but that it never left any marks.  We agree with the juvenile court that there is not clear and convincing evidence to adjudicate N.C. in need of assistance under section 232.2(6)(b) (physically abused or neglected or imminently likely to be abused or neglected).  And neither the State nor the GAL has challenged the court's dismissal of the CINA petition under section 232.2(6)(p).

We affirm the juvenile court's dismissal of the CINA petition as to section 232.2(6)(b) and (p).  *See In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014) ("The grounds for a CINA adjudication do matter" and may affect what grounds for termination the State may rely upon).  Because we determine N.C. is a child in need of assistance

pursuant to section 232.2(6)(d), we reverse the court's dismissal of the petition under that ground.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**