**IN THE COURT OF APPEALS OF IOWA**

No. 24-0915
Filed September 18, 2024

**IN THE INTEREST OF M.H.,**
**Minor Child,**

**T.H., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Appanoose County, Richelle Mahaffey, Judge.

A mother appeals the removal and adjudication of her son as a child in need of assistance. **AFFIRMED.**

Monte McCoy, Centerville, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Julie De Vries of De Vries Law Office, PLC, Centerville, attorney and guardian ad litem for minor child.

Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**TABOR, Chief Judge.**

A mother challenges the removal of her infant son, his adjudication as a child in need of assistance (CINA), and the juvenile court's dispositional order continuing his placement outside her home. The mother's claims about the initial removal are moot. As for the adjudication and disposition, clear and convincing evidence in the record supports the juvenile court's findings.[1] So we affirm.

## I.    Facts and Prior Proceedings

M.H. was born in late December 2023 at the home of an Amish midwife in Davis County. The juvenile court ordered an emergency temporary removal of M.H. from his mother's custody after the Iowa Department of Health and Human Services received an anonymous report that she was using methamphetamine and chose that birthing option to avoid mandatory reporting concerns at a hospital. The reporter also described M.H. as needing oxygen at birth.

The department was familiar with the mother because she had her rights terminated for two older children based on substance use. At the request of child protection workers, one week after his birth, law enforcement located M.H. and his mother at the home of her adult son in Bremer County. Law enforcement believed that both the adult son and other residents of that home were methamphetamine users. When the child protection worker arrived to remove M.H., the mother was

---

[1] We review CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). In that review, we are not bound by the juvenile court's fact findings; but we give them weight. *Id.* "Our primary concern is the child[ ]'s best interests." *Id.* The State must prove its CINA allegations by clear and convincing evidence. Iowa Code § 232.96(2) (2024).

"wailing and inconsolable." In fact, the mother was so distraught that the worker could not carry on a conversation or interact with her.

Once M.H. was placed in foster care, the foster mother reported he showed signs of drug withdrawal, including tremors, difficulty feeding, "excessive diarrhea," and "jerky muscle movements." Despite those signs, M.H.'s mother denied having used methamphetamine before his birth.

The State filed its CINA petition when M.H. was ten days old. In March, the juvenile court held a hearing on that petition. The mother testified that she chose an Amish house to have M.H. because she "didn't have really a good experience [giving birth] in a bigger hospital." She acknowledged M.H. received oxygen after his birth but testified that it was "just to be safe" and "he didn't really need it." She denied using controlled substances and said the prior terminations of her parental rights were "not due to drugs." She also acknowledged she had been diagnosed with bipolar disorder but said she no longer took medication for the condition. She expressed uncertainty about her other mental-health diagnoses.

The juvenile court did not find the mother's testimony credible and decided she was "in severe need" of substance-use and mental-health treatment. Given the mother's situation, the court found "substantial evidence that the child's life or health would be in imminent danger if returned" to her custody. Because of that imminent danger, the court found that the need to remove M.H. from his home outweighed "the potential harm of removal, including but not limited to physical, emotional, social, and mental trauma resulting from removal." *See* Iowa Code

§ 232.95(6)(a). The court adjudicated M.H. as a CINA under Iowa Code sections 232.96A(3)(b) and 232.96A(14).[2]

Two months later, the juvenile court held a dispositional hearing. The court learned from the department that the mother was living in Minnesota. The department described the accommodations as "a shed in the backyard" of her stepfather's house. The mother had not completed an updated substance-use evaluation or engaged in treatment. The court also found that the mother was struggling with her mental health and experiencing "delusional and paranoid thought patterns." As a result, she had trouble keeping track of scheduled visits with M.H. On this record, the court found that returning M.H. to the mother's custody would be contrary to his welfare. The mother appeals the CINA adjudication and dispositional orders.[3]

## II.     Analysis

## A.     Removal

The mother starts her petition by confronting the "assertions of an anonymous reporter" included in the application for temporary removal. She contends those assertions were not verified or corroborated before they prompted the court's ex parte decision to remove M.H. from her custody. The mother raised similar concerns about the anonymous reporter in the juvenile court. The child protection worker testified that the department received the report about M.H.

---

[2] The mother's attorney tried to appeal the CINA adjudication order. On its own motion, our supreme court determined that it was not a final order. The court treated the notice as an application for interlocutory appeal and denied it.

[3] The adjudication order noted that the mother had not provided the department with the name of M.H.'s father and directed her to do so. But our record does not show that paternity has been established yet.

through the child abuse hot line.[4]  The worker was not concerned about the anonymous nature of the report, explaining:

> Lots of people call in to the department anonymously because they don't want anyone to spend any time trying to identify who the reporter is.  They don't want to put themselves in danger if that person should identify who they would be by something we might put in there that somehow makes them identify that person.

In that vein, the legislature tried to strike a balance between providing "the greatest possible protection to victims or potential victims of abuse through encouraging the increased reporting of suspected cases of abuse" and avoiding "the harm caused by a child's removal" from the child's family.  *Id.* § 232.67.  When it comes to M.H.'s initial removal, we cannot do that balancing.  As the State points out in its response to the petition on appeal, the mother's claims about the initial removal order are now moot because of the subsequent dispositional order.  *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) ("We cannot go back in time and restore custody based on alleged errors in the initial removal order.").  We address the child's continued removal as part of our discussion of the CINA adjudication and disposition.

### B.    Adjudication and Disposition

The mother next argues the State did not offer clear and convincing evidence to support either ground for the CINA adjudication.  She contends the juvenile court "erroneously relied" on the allegations of the anonymous child abuse reporter to justify M.H.'s CINA adjudication.  She acknowledges her "prior history"

---

[4] Iowa is one of at least forty states to allow the public to report child abuse anonymously.  *See* Dale Margolin Cecka*, Abolish Anonymous Reporting to Child Abuse Hotlines*, 64 Cath. U.L. Rev. 51, 54 (2014) (explaining that callers need not identify themselves or the reasons for the report).

but questions the court's finding of imminent harm without corroboration of her current methamphetamine use.

To adjudicate M.H. as a CINA, the court relied on these two grounds: "The child has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." Iowa Code § 232.96A(3)(b). And: "The child's parent . . . suffers from a mental incapacity, a mental condition, imprisonment, or drug or alcohol abuse that results in the child not receiving adequate care or being imminently likely not to receive adequate care." Id. § 232.96A(14).

In their responses to the petition on appeal, both the State and M.H.'s guardian ad litem (GAL) point to evidence showing M.H. was likely to suffer harmful effects if he remained in the mother's custody. See J.S., 846 N.W.2d at 41 (broadly defining "harmful effects" as forces impacting "the physical, mental or social welfare of a child"). Their responses note that after choosing a non-traditional delivery location, the mother did not seek traditional medical care for M.H. after he had breathing issues at birth. Instead, she moved in with her adult son, whose home did not offer a healthy environment for an infant. When child protection workers located her, she refused their initial request to participate in drug testing. And when she did test, the sample was diluted, which caused the juvenile court to believe that she had tampered with it.

The mother also struggled with her mental health but sought no treatment. Her actions at the removal were erratic. The juvenile court viewed these new incidents against the backdrop of the mother's "lengthy history" with the department. In two prior cases, the mother's rights were terminated based on

"unaddressed methamphetamine use and mental health issues." In those cases, she took the children from Iowa to Minnesota to avoid department intervention.

Meanwhile, M.H. exhibited signs of drug withdrawal while in foster care. And earlier, the mother had declined to allow M.H.'s hair to be tested for drug exposure. Faced with these facts, the juvenile court did not have to wait for greater harm to befall M.H. before adjudicating him as a CINA. *See id.* at 43 (citing case law supporting a "liberal interpretation" of "imminently likely" harm in the CINA context).

Clear and convincing evidence supported the court's finding that M.H. was "imminently likely to suffer harmful effects" from the mother's failure to exercise a reasonable degree of care in supervising him and that continued removal from her custody was warranted. Iowa Code § 232.96A(3)(b). Ample evidence also supported the court's finding that the mother suffered from a mental condition and substance use that led to M.H. "not receiving adequate care or being imminently likely not to receive adequate care." *See* Iowa Code § 232.96A(14). On this record, the juvenile court properly concluded that the child remained in need of assistance and could not yet be returned to his mother's custody.

**AFFIRMED.**