**IN THE COURT OF APPEALS OF IOWA**

No. 25-1034
Filed October 29, 2025

**IN THE INTEREST OF P.S.-B. and F.S.,
Minor Children,**

**S.S., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Hancock County, Karen Kaufman
Salic, Judge.


        The mother appeals the dispositional order in a child-in-need-of-assistance
proceeding. **AFFIRMED.**


        William T. Morrison, Mason City, for appellant mother.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, for appellee State.

        Cameron M. Sprecher, Mason City, attorney and guardian ad litem for minor
children.


        Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**TABOR, Chief Judge.**

A mother, Shelby, appeals the dispositional order confirming the adjudications in child-in-need-of-assistance (CINA) proceedings involving her six- and one-year-old daughters. Finding no reversible error, we affirm.[1]

## I.      Facts and Prior Proceedings

At the start of 2025, P.S.-B. lived with Shelby, who was around thirty weeks pregnant, and Shelby's paramour, Travis. In January, Travis was arrested for assaulting Shelby while P.S.-B. was present. A booking search revealed that Travis possessed methamphetamine. And testing of P.S.-B. was positive for exposure to methamphetamine. Shelby downplayed the ten-year history of domestic abuse in her relationship with Travis and claimed to be unaware that he used methamphetamine. The Iowa Department of Health and Human Services removed P.S.-B. and placed her with paternal grandparents.[2] In its removal order, the juvenile court ordered Shelby to participate in drug testing and obtain a mental-health evaluation. A drug test was negative for illegal substances.

At the end of that month, Shelby gave birth to F.S.[3] Although drug tests for both Shelby and the infant were negative, when a department worker arrived at the hospital to check on the family, Shelby lashed out. She left the hospital against

---

[1] "We review [CINA] proceedings de novo." *In re V.G.*, 995 N.W.2d 530, 536 (Iowa Ct. App. 2023). We give weight to the juvenile court's fact findings but are not bound by them. *Id.* Our top consideration is the children's best interests. *Id.*

[2] P.S.-B.'s father has visitation under a custody decree. But he cannot have physical care of his daughter because of his medical conditions. He is not involved in this appeal.

[3] F.S.'s father is also not involved in this appeal.

medical advice, and without F.S., who remained in the neonatal intensive care unit. The juvenile court placed F.S. with foster parents.

After those outbursts, Shelby obtained a mental-health evaluation that recommended further psychiatric evaluation, medication management, and mental-health treatment based on her history of bipolar disorder, depression, and PTSD. But communication and efforts to provide visitation and other services were difficult because of Shelby's erratic behavior and volatile emotions.

At the adjudication hearing, the juvenile court witnessed these behaviors. The court found Shelby was "angry and combative" and "[a]ttempts to de-escalate her were unsuccessful." As the court noted, Shelby stipulated to the adjudication. But it also found her "behavior makes clear that she cannot safely parent either of these children. She is completely unable to attain or maintain focus on other people or calmly do anything." The court acknowledged it was "an extremely difficult situation" because testing showed she did not have a substance-use issue, but "her emotional dysregulation must be fueled by her mental health condition." It found adjudication was proper under grounds listed in Iowa Code section 232.96A(3)(a) (2025), (3)(b), (14), and (15) as to both children and also section 232.96A(3)(a)(16)(b) as to P.S.-B.

By the dispositional hearing, there was little improvement despite Shelby's regular participation in mental-health treatment. She continued to test negative for substances, and the department planned to discontinue testing. But she remained emotionally unstable and continued to have trouble cooperating with the department and service providers, especially medical professionals. Shelby largely blamed the department for her children's removal rather than reflecting on

her mental-health concerns, her relationship with Travis, or his substance use and the danger it posed to the children. The juvenile court confirmed adjudication and continued removal of the children. Shelby appeals.

## II. Discussion

Shelby raises several issues, but we address the only two cognizable claims:[4] (1) the juvenile court erred in adjudicating the children as CINA, and (2) the court erred at disposition in finding that continued removal was proper.

On adjudication, Shelby contends the State did not present clear and convincing evidence to support any of the grounds. She argues there was no evidence of her continued contact with Travis nor evidence of her using drugs. The State contests Shelby's error preservation, arguing that the juvenile court found she stipulated to the adjudication. At the hearing, although Shelby's counsel stated that she "would agree to the adjudication" and "accept[ed] the recommendations and the adjudication," Shelby cut in, saying, "I just disagree with everything going on right now, for the record." She explained, "I'm here agreeing to do all of this because they have threatened me that I won't get my kids back . . . so I agree with everything that's going on, . . . I'll do whatever they say because they have my kids, . . . ." Despite Shelby's reluctance to accept the choices before her, she did not contest the adjudication before the juvenile court, so she did not

---

[4] Shelby first contests the removal orders. But we agree with the State that those challenges are moot. *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) ("Any error committed in granting the temporary ex parte order cannot now be remedied. We cannot go back in time and restore custody based on alleged errors in the initial removal order.").

preserve her challenge to the adjudicatory grounds.[5]  *See In re C.W.N.*, No. 07-1368, 2007 WL 2965057, at *2 (Iowa Ct. App. Oct. 12, 2007).

As to disposition, Shelby argues the State did not prove the continued need for removal of the children from her care.  *See* Iowa Code § 232.102(1)(a) (directing the juvenile court after a dispositional hearing to enter an order continuing removal "[i]f the court finds that custody with either of the child's parents is not in the child's best interests"); (4)(b) (directing juvenile court to "make a determination that continuation of the child in the child's home would be contrary to the welfare of the child, and . . . identify the reasonable efforts that have been made").  She again points to her negative drug tests and the lack of proof that she continued contact with Travis.

At the dispositional hearing, the court heard that Shelby bought P.S.-B. a cellphone on which the six-year-old was able to call Travis.  Shelby has also rejected recommended medical treatment for F.S.'s acid reflux and P.S.-B.'s ear infection, has not consented to immunizations, and has not provided immunization exemption paperwork that the foster parents needed for F.S. to continue attending her daycare.  Shelby has disagreed with medical providers and blocked medical care so often that F.S. missed her four-month check-up, and Shelby still had not identified a pediatrician she was willing to let F.S. see.  Overall, Shelby lacks judgment and basic knowledge about infant care and is unwilling to consider

---

[5] Had she not agreed to adjudication, we would still find the grounds for adjudication are met under Iowa Code section 232.96A(3)(a), (3)(b), (14), (15), and (16)(b) (as to P.S.-B.).  Shelby's mental health and instability have resulted in harm to the older child, who tested positive for methamphetamine, and are imminently likely to result in harm to the infant, F.S.

medical advice. She has also had inappropriate emotional outbursts during medical appointments and other service provider contacts, showing the impact of her mental-health condition on her ability to safely parent. We agree with the juvenile court that removal remains necessary to protect the children from Shelby's unresolved mental-health concerns, her instability, and her lack of cooperation in addressing the children's medical needs. It is also necessary because Shelby facilitated her older child's contact with her domestic abuser.

Finding no grounds to reverse the disposition, we affirm.

**AFFIRMED.**