# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1627
Filed January 7, 2026

————————————

**In the Interest of E.R.-H., Minor Child,**

**K.R.-H., Mother,**
Appellant,

**M.R.-H., Father**,
Appellant.

————————————

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Daniel L. Block, Judge.

————————————

**AFFIRMED ON BOTH APPEALS**

————————————

Joseph G. Martin, Cedar Falls, attorney for appellant mother.

Thomas J. Richter, Waterloo, attorney for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, for appellee State.

Kelly Smith, Waterloo, attorney and guardian ad litem for minor child.

————————————

Considered without oral argument
by Greer, P.J., and Schumacher and Ahlers, JJ.
Opinion by Ahlers, J.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of both parents of a child born in 2024 with methamphetamine in her system. Both parents separately appeal.

## I.    Standard and Process of Review

Our review is de novo. *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc). We follow a three-step process of determining (1) whether a statutory ground for termination under Iowa Code section 232.116(1) (2025) has been established; (2) whether termination is in the child's best interest after applying the framework codified in section 232.116(2); and (3) whether a permissive exception under section 232.116(3) should be applied to deny termination. *Id.* We do not address any steps not challenged by a parent. *Id.* After we address any challenged steps of the three-step process, we then address any additional challenges raised by a parent. *Id.*

## II.    Discussion

We address each parent's appeal separately.

### A.    The Mother's Appeal

From our review of the mother's petition on appeal, we discern that the mother challenges the statutory grounds for termination and, alternatively, claims she should be given an additional six months to work toward reunification.[1] We address these challenges in turn.

---

[1] If the mother was attempting to raise other issues, we find the issues waived or forfeited for failing to adequately raise or develop the issues. *See In re A.T.*, No. 25-0528, 2025 WL 1704442, at *1 n.2 (Iowa Ct. App. June 18, 2025) (finding sprinkled references to an issue inadequate to avoid waiver or forfeiture of the issue when the issue is not given its own issue heading as required by the Iowa Rules of Appellate Procedure, no authority is cited, or no substantive argument is made).

### 1.    Statutory Grounds

When the juvenile court terminates a parent's rights under more than one statutory ground, we may affirm on any ground supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Here, the juvenile court terminated the mother's rights under section 232.116(1)(e) and (h). We focus on paragraph (h), which permits termination of parental rights upon proof of all the following:

> (1)    The child is three years of age or younger.
>
> (2)    The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>
> (3)    The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
>
> (4)    There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h). The mother challenges only the fourth element. In doing so, she does not contend that the child could have been returned to her custody. Rather, she contends only that the child could have been returned to the father's custody. But this argument does not advance the mother's cause because we make separate determinations as to each parent. *See In re C.T.*, No. 18-2199, 2019 WL 1055897, at *1 n.1 (Iowa Ct. App. Mar. 6, 2019) (collecting cases rejecting challenges to termination of one parent's rights based on the claim the child could or should be returned to the other parent); *In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (holding one parent does not have standing to assert arguments on behalf of the other parent); *In re D.G.*, 704 N.W.2d 454, 459 (Iowa Ct. App. 2005) (holding one parent cannot assert factual or legal positions pertaining to the other parent, as the court makes a separate adjudication as to each parent). As the mother

makes no claim that the child could be returned to her custody, her challenge to statutory ground under section 232.116(1)(h) fails, and we affirm on that ground.

### 2.      Additional Time

The mother also contends she should have been given additional time to work toward reunification. This is an option permitted by statute. *See* Iowa Code § 232.117(5) (permitting entry of a permanency order under section 232.104 if the court does not terminate parental rights); *see also id.* § 232.104(2)(b) (authorizing a permanency option of giving a parent an additional six months to work toward reunification). But to exercise this option, we must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

Like the juvenile court, we see no evidentiary support for a determination that the need for removal will change if the mother is given six more months. By the time of the termination trial, the child had been out of the mother's custody for nearly sixteen months, but the mother was no closer to regaining custody than when the child was initially removed. She refused all drug tests and drug treatment even though it was her drug use while pregnant with the child that prompted juvenile court involvement. *See A.B.*, 815 N.W.2d at 776 (recognizing that unresolved substance use supports termination of parental rights). She has also failed to address her mental-health issues. *See In re D.H.*, No. 18-1552, 2019 WL 156668, at *2 (Iowa Ct. App. Jan. 9, 2019) (collecting cases and finding failure to meaningfully address mental-health issues to be a basis for terminating parental rights). She has gone long stretches without visiting the child, and the visits she has exercised remained supervised for the child's safety. *See In re L.H.*, 13 N.W.3d 627, 629 (Iowa Ct. App. 2024) (finding failure to progress beyond supervised visits

4

supports termination of parental rights), *overruled on other grounds by L.A.*, 20 N.W.3d at 534. In short, the juvenile court was correct to conclude that the mother should not be given six more months to work toward reunification.

## B. The Father's Appeal

The father challenges (1) the statutory grounds for termination, (2) the finding that termination was in the child's best interest, and (3) the refusal to give him additional time to work toward reunification.

### 1. Statutory Grounds

As it did with the mother, the juvenile court terminated the father's parental rights under section 232.116(1)(e) and (h). As we did with the mother, we focus on paragraph (h), the elements of which are identified earlier in the opinion. The father challenges only the fourth element, claiming the child could have been returned to his custody at the present time—meaning at the time of the termination trial. *See* Iowa Code § 232.116(1)(h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" in section 232.116(1)(h)(4) to mean "at the time of the termination hearing").

The father highlights the fact that when the child was born with methamphetamine in his system a safety plan was developed under which he served as the child's caretaker. He contends this establishes that he is fit to have custody of the child returned to him. But the father's role as the caretaker under the safety plan was conditioned on him not allowing the mother to have unsupervised contact with the child. The father violated that condition, which resulted in the child being removed from both parents' custody.

As he did with service providers throughout the case, on appeal, the father continues to complain about the child's removal. To the extent the father is attempting to challenge the removal, it is too late, as child-in-need-

of-assistance (CINA) adjudication and dispositional orders have been issued that also removed the child from his custody. *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) (holding that a challenge to removal is moot once the court enters CINA adjudication and dispositional orders that remove a child from a parent's custody).

The father also points to the things he has done to comply with the requirements imposed upon him and contends that the fact that the child could not be returned to the mother's custody should not have prevented him from regaining custody. But the father ignores important details.

First, he has not done all that has been required of him. In particular, given the mother's drug use and his sometimes-erratic behavior when in the mother's presence, he was ordered to submit to drug testing to ensure that he was not using. He refused all drug tests. And, when it came to his attention that he may be compelled to give a hair test, he shaved his head. For obvious reasons, this behavior increased the concerns of the father's drug use, which contributes to the conclusion that the child cannot be returned to his custody. *See In re R.A.*, No. 21-0746, 2021 WL 4891011, at *1 (Iowa Ct. App. Oct. 20, 2021) (collecting cases noting missed tests are presumed positive for illegal substances).

Second, the father's contention that he should not be prevented from regaining custody because of the mother's shortcomings ignores his role in the child's removal. As noted, the father had the child in his care prior to removal under a safety plan. He violated the safety plan by giving the mother unsupervised contact with the child. And even though that happened nearly sixteen months before the termination trial, the father thereafter refused to recognize the mother's shortcomings and refused to enforce boundaries with her. For example, the father refused to acknowledge the mother's drug use despite her admission of it, relying instead on her later recantation. The father went so far in his level of denial as to deny that the child tested positive for

methamphetamine at birth and joined in the mother's claim that their baby was switched at the hospital with another baby who had tested positive. Because of the father's refusal to acknowledge the mother's issues and his past failure to protect the child from the mother, it was appropriate for service providers and the juvenile court to decline to give the father unsupervised visits with the child. *See In re D.D.*, 955 N.W.2d 186, 193 (Iowa 2021) ("It's folly to think the [father] will stand sentinel to protect against a foe [he] doesn't acknowledge exists."). And a failure to progress past supervised visits prevents custody from being returned to the father. *In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("[The parent] never progressed to unsupervised visits or trial home visits. Without this necessary progression, we cannot say the children could have returned to the [parent]'s care."). As a result, the juvenile court properly found a ground for termination of the father's rights under section 232.116(1)(h).

### 2. Best Interests

The father also challenges the juvenile court's conclusion that terminating his rights is in the child's best interests. In assessing this challenge, we are required to follow the framework of section 232.116(2). *In re P.L.*, 778 N.W.23d 33, 37 (Iowa 2010). This requires us to consider "the child's safety" as well as "the best placement for furthering the long-term nurturing and growth of the child," including "the physical, mental, and emotion condition and needs of the child." Iowa Code § 232.116(2). We also consider whether "the child has become integrated into the foster family to the extent that the child's familial identify is with the foster family, and whether the foster family is able and willing to permanently integrate the child into the foster family." *Id.* § 232.116(2)(b).

The father emphasizes the testimony that he has a bond with the child. And a parent-child bond is appropriately considered as part of the best-interests analysis. *L.A.*, 20 N.W.3d at 535. But, while we don't question the

7

testimony that the father has a bond with the child, we do question the strength of that bond given that the child has been out of the father's custody for sixteen consecutive months after she turned two months old. And the evidence firmly establishes that the child is very bonded to her caretaker—the child's maternal aunt—and is thriving in the caretaker's home. The caretaker also desires to adopt the child. *See* Iowa Code § 232.116(2)(b); *see also id.* § 232.2(23) (including "an adult relative" in the definition of "foster care"). Following our de novo review, we agree with the juvenile court that termination of the father's parental rights to allow for adoption is in the child's best interests.

### 3. Additional Time

As his final challenge, the father contends he should have been given an additional six months to work toward reunification instead of terminating his rights. We have already spelled out the legal standards regarding this challenge in the section of this opinion addressing the mother's corresponding challenge, so we will not repeat them. But we apply those same standards to the father's claim.

The father highlights all the things he has done since removal, and he uses that list to support his request for more time. We commend the father for the things he has done. But the fact remains that he has made no progress on a key component—recognizing the safety risk the mother poses to the child and developing his ability to protect the child from that risk. As noted, the father refuses to acknowledge the mother's issues, and thus fails to have the capacity to protect the child from the harm the mother poses. The record firmly demonstrates that he will always choose placating the mother over protecting the child, which poses a danger to the child. There is no persuasive evidence that this will change at any time, let alone in the next six months. Accordingly, we cannot find any "expected behavioral changes" by the father that would cause us to conclude "that the need for removal of the child from

the child's home will no longer exist at the end of the additional six-month period." *See id.* § 232.104(2)(b) (spelling out the requirements for a permanency order granting a parent an additional six months). So we reject the father's contention that he should be given additional time for reunification.

### III.  Conclusion

As to the mother's appeal, a statutory ground for termination of her parental rights has been established, and she is not entitled to additional time to work toward reunification. As to the father's appeal, a statutory ground for termination has been established, and termination of the father's rights is in the child's best interests. The father is not entitled to additional time to work toward reunification. Therefore, we affirm the juvenile court on both appeals.

**AFFIRMED ON BOTH APPEALS.**