# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-2017
Filed February 11, 2026

————————————

**In the Interest of A.H., Minor Child,**

**A.B., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Cerro Gordo County,
The Honorable Adam D. Sauer, Judge.

————————————

**AFFIRMED**

————————————

Jane M. Wright, Forest City, attorney for appellant mother.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney
General, attorneys for appellee State.

Michael J. Moeller of Laird Law Firm, P.L.C., Clear Lake, attorney and
guardian ad litem for minor child.

————————————

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Schumacher, J.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights to her daughter, A.H., born in 2023.[1] She challenges the sufficiency of the evidence supporting the grounds for termination, claims termination is not in the child's best interests, and argues a permissive exception to termination applies. Upon our review,[2] we affirm.

## I.    Grounds for termination

The district court terminated the mother's parental rights under Iowa Code section 232.116(1)(h) (2025). The mother does not dispute the first three elements of that statutory ground—the child is three years of age or younger, the child has been adjudicated in need of assistance, and the child has been removed from her custody for at least six months. Rather, she focuses on the fourth element—whether the child could be safely returned to her custody at the time of the termination hearing. Iowa Code § 232.116(1)(h)(4).

The child was removed in September 2024,[3] after the mother was found "passed out" in a gas station parking lot at 3:00 a.m. The child was in the backseat. After being woken up by staff, the mother left the parking lot and was then stopped by police on a nearby highway. Police allowed the mother's sister to pick them up. The sister reported the mother was "high"

---

[1] The father's parental rights were also terminated. He does not appeal.

[2] We review termination-of-parental-rights proceedings de novo. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

[3] The mother has had prior involvement with the Iowa Department of Health and Human Services, and her parental rights to five other children have been terminated.

and the family had "tried to force her to get help." The child's hair tested positive for "a significantly high level" of methamphetamine.

Since then, the mother has denied any type of substance use,[4] despite being on probation for a drug-related charge. She stated she did not know why the child would test positive for methamphetamine but surmised maybe another person had used methamphetamine around the child. At the termination hearing, she testified she did not attend drug tests because she didn't want her "hair cut" or she was "busy with walking a dog or on a job." Specifically relating to the test she missed a week before the termination hearing, she stated she had just moved and she "wasn't able to lock the place up." At the termination hearing, the mother agreed she had not taken any drug tests for the department during the life of this case, but she testified that if she was given more time, she would "try" to complete them.

Aside from her failure to show sobriety, the mother did not complete other case plan requirements. The mother inconsistently attended sessions with her family-centered services (FCS) provider (she attended only nineteen of seventy-two sessions); she did not participate in family treatment court as recommended (but she stated she "still would like to do it and complete it"); and she usually ended visits with the child early (the provider estimated about sixty percent of the visits were ended early). Visits never progressed beyond fully supervised. In short, the provider reported the mother's compliance with services had been "little to none." As the guardian ad litem opined, "This child does need permanency and this case has been opened for quite a while, over a year and I believe there just hasn't been any progress shown . . . ." Upon our review, we conclude the State offered clear

---

[4] She testified she completed two or three substance-use evaluations, during which she stated she had used marijuana but not since in high school.

and convincing evidence that the child cannot be returned to the mother's custody.

## II.    Best Interests

The mother also claims termination is not in the child's best interests. In assessing A.H.'s best interests, we give primary weight "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id*. § 232.116(2). We also consider what care A.H. would receive if returned to her mother. *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (citation omitted). "To determine this, we look to the [mother's] past performance because it may indicate the quality of care the parent is capable of providing in the future." *In re C.C.*, No. 25-1073, 2025 WL 2658412, at *4 (Iowa Ct. App. Sept. 17, 2025) (cleaned up).

We acknowledge the mother's belief that A.H. will "be forever hurt, messed up mentally" if her parental rights are terminated, but we weigh it against the caseworker's opinion that A.H. needs safety, permanency, and stability that the mother has not shown she could provide:

> We have a child that has her own specific needs. She needs very consistent structure and stability. She needs a lot of assistance with maintaining her day-to-day. Whether it be trying to get her caught up on her own speech and development, but just, you know, that basic stability. And . . . we're a year in, we have not even maintained the visits, the interactions that could have occurred, but we're ending interactions early, we're canceling interactions, we're not confirming interactions, we're confirming child's being brought to interactions, only to have parents not show for those, interactions are ending early, that is not something that [A.H.] can survive in. Plus, we have instability with housing, we have very inconsistency with the relationship—relationship between parents, relationships with other people, they don't have the core skills needed to parent her on a full-time basis let alone because we have no drug testing,

we have no baseline of parents' sobriety in well over a year and that is not safe for a child of [A.H.]'s age.

Termination is in A.H.'s best interests.

## III.   Permissive exceptions to termination

The mother points to the exception to termination under section 232.116(3)(c), claiming "[t]he child has a demonstrated bond to her . . . and a termination would be detrimental to the child due to the closeness of their parent-child relationship." To avoid termination under this exception, "[t]he law requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (quoting Iowa Code § 232.116(3)(c)).

The FCS provider acknowledged "there is a connection and there is a bond" between the mother and A.H. and the child "is excited" when she sees the mother. But the provider reported "[j]ust within the last two weeks, there were two out of five visits that were attended." She opined the mother's "lack of consistency" showed the mother had not put the child "in a place of importance" in her life. The caseworker testified similarly. Under these circumstances, the mother has not established termination of her rights will be detrimental to the child.

We affirm the termination of the mother's parental rights.[5]

**AFFIRMED.**

---

[5] The mother also states that she "contested" the removal hearing and child-in-need-of-assistance adjudication, and she "maintained her position on this throughout the life of these cases." Even if we were able to construe a claim from these statements, any challenges to those prior orders are moot. *See generally In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) (observing we "cannot go back in time" and review "alleged errors" in orders after the time to appeal those orders has passed).