**IN THE COURT OF APPEALS OF IOWA**

No. 24-1689
Filed January 9, 2025

**IN THE INTEREST OF A.C.,**
**Minor Child,**

**J.S., Mother,**
     Appellant.
_____

     Appeal from the Iowa District Court for Wapello County, Richelle Mahaffey, Judge.

     A mother appeals the juvenile court's dispositional order adjudicating her daughter in need of assistance and continuing the daughter's removal from her custody. **AFFIRMED.**

     Sarah Wenke, Ottumwa, for appellant mother.

     Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

     Samuel K. Erhardt, Ottumwa, attorney and guardian ad litem for minor child.

     Considered by Greer, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

After relapsing on methamphetamine in June 2024, a mother agreed to a safety plan that placed her then-eight-year-old daughter in the care of a relative. Later, the juvenile court adjudicated the daughter in need of assistance and removed the daughter from the mother's custody. By the first dispositional hearing, the mother believed she had progressed enough that the daughter's adjudication was no longer warranted, and even if it were, continued removal was not the least restrictive disposition. The juvenile court disagreed and reaffirmed the daughter's adjudication and removal. The mother appeals.

On our de novo review, we find clear and convincing evidence supports adjudicating the daughter in need of assistance. The mother's addiction and possession of paraphernalia has impacted the daughter—the daughter reported the mother having "glass tube things" in the home and could describe her mother's behavioral changes while using. The mother's fiancé, who lived in the home, also admitted to using methamphetamine. And the mother and fiancé were twice pulled over while driving with drugs and paraphernalia in the car, and that car was kept on the premises of the child's home. As for removal, the mother's appeal from the initial ex parte removal is now moot. And after the dispositional hearing, the juvenile court appropriately extended the daughter's removal. The mother's history of prior illegal substance use, coupled with irregularities and inconsistencies with the mother's testing, all indicate further proof of consistent sobriety is needed to ensure a safe home environment for the daughter. Thus, we affirm.

## I.    Factual Background and Proceedings

The mother and her daughter came to the attention of the Iowa Department of Health and Human Services ("HHS") in early June 2024.[1]  During an in-home visit, the mother and her fiancé both admitted to using methamphetamine the night before.  The HHS social worker also spoke to the daughter, who relayed her mother kept "glass tube things" in the home, which she was not allowed to touch.  Later discussions with the daughter revealed she could describe the appearance and consistency of THC wax.  And she could explain how her mother's behavior changes when using illegal substances.  Also around this time, two traffic stops led to six criminal charges against the mother—she was found possessing methamphetamine, a methamphetamine pipe, and other illegal substances.[2]  As a result, HHS created a safety plan with the family that placed the daughter in a relative's care.

In July, the mother enrolled in outpatient treatment.  As part of that treatment, an issue arose with the mother's Adderall prescription and her urine analyses.  The first analysis came back positive for amphetamine or methamphetamine, which required the mother to pay $12.50 for confirmation testing to confirm she was only positive for amphetamine (consistent with her

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public.  *Compare* Iowa Code § 232.147(2) (2024), *with id.* §§ 602.4301(2), 602.5110.

[2] During a June interview with HHS, the mother expressed frustration with HHS involvement, as she had arranged for a nanny to care for her daughter during periods when she was using, including these traffic stops.  According to HHS, the mother stated she "did not understand why there is a problem if she was using methamphetamine if she was not using around her daughter and she had a nanny in the home that was sober."

prescription use). Yet when a second analysis also came back positive for amphetamine or methamphetamine, the mother did not want to again pay for confirmation testing and expressed frustration at having to confirm every time. HHS was concerned that, without confirmation testing, the mother could continue using methamphetamine and merely assign the positive result to her prescribed Adderall. To that end, HHS offered to perform (random) patch tests that would not need confirmation testing, but the mother refused.

In August, the State petitioned to adjudicate the daughter in need of assistance. While awaiting the hearing, HHS and the mother could not agree to a continuation of the safety plan, so HHS obtained an ex parte temporary removal order continuing the placement with the same relative. At the adjudicatory hearing, a social worker explained that HHS's primary concern was the mother's substance use. HHS did not "have any negative testing" from the mother, and she declined HHS's patch tests. Without proof of sobriety, HHS believed the adjudication was necessary to protect the daughter.

On September 6, the juvenile court adjudicated the daughter, now nine years old, in need of assistance under Iowa Code section 232.96A(3)(b), (14), (16)(a), 16(b), and (16)(d) (2024). And it reaffirmed the daughter's removal, keeping custody with HHS and the daughter's placement with the relative.

Between the September adjudication and the October dispositional hearing, HHS did not ask the mother to do any drug tests. HHS explained its lack of testing was because the mother refused patch tests—citing an adhesive allergy—and hair tests would not be appropriate. As for the mother's urine-analysis testing under her treatment program, the mother submitted one test in late September, but the

lab rejected her sample because it appeared substituted. The mother denied any tampering.

During the dispositional hearing, HHS argued that given the mother's history with illegal substance use—particularly relapsing after periods of sobriety—the daughter should remain out of her mother's custody until a longer period of sobriety is established. The mother disagreed, testifying that she follows her treatment plan, HHS never asked her to test, and all visits with her daughter have gone well. As for the daughter's well-being, the mother emphasized that the removal forced the daughter to change schools, leaving behind friends she had known since kindergarten.

The juvenile court reaffirmed the daughter's adjudication and removal. The court first noted that the mother's adhesive allergy has never been medically diagnosed, and instead is based on the mother's own self-reports. The court also expressed concern that the mother's latest urine analysis was rejected as unreliable. And so, the court reasoned that it would not return the daughter to the mother's care until the mother "demonstrate[s] a prolonged period of sobriety through compliance with drug screens that are negative for illegal substances, and through regular attendance in substance abuse treatment." The mother appeals.

## II. Adjudicating the Daughter In Need of Assistance

The mother first disputes whether the daughter continues to be in need of assistance. The State carries the burden to prove an adjudicatory ground under section 232.96A by clear and convincing evidence. *See* Iowa Code § 232.96(2). Because different grounds may carry different consequences down the road, we consider every ground challenged by the mother, even if we affirm one or more.

*In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014). We review the juvenile court's findings de novo, giving due weight to the court's credibility and factual findings. *Id.* at 40. And, as always, we are guided by what is best for the daughter. *Id.*

First, clear and convincing evidence supports adjudicating the daughter in need of assistance under subsection 3, paragraph "b." *See* Iowa Code § 232.96A(3)(b) (allowing adjudication if a "child has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child"). The mother has an ongoing methamphetamine addiction, kept paraphernalia in the home, and the daughter could tell when her mother was under the influence. *Cf. J.S.*, 846 N.W.2d at 37 ("We have no difficulty concluding . . . that a parent's methamphetamine addiction by itself can result in 'harmful effects' to the child, thereby justifying state intervention to protect the child."). Although the mother insists her use has always been outside the home, the daughter's statements indicate otherwise. And we are further unpersuaded that, because the mother hired a nanny to care for the daughter while the mother was using for several days, that the daughter was safely cared for—the mother knew the nanny had her parental rights to her own children terminated. So we find the mother's drug use in fact places her daughter at risk and undermines her ability to ensure adequate supervision.[3]

---

[3] The mother also disputes adjudication under subsection 14. *See* Iowa Code § 232.96A(14) (allowing adjudication if a "child's parent . . . suffers from . . . drug or alcohol abuse that results in the child not receiving adequate care or being imminently likely not to receive adequate care"). But she offers no independent legal or factual argument to support her opposition on appeal. And we cannot supply that advocacy for her. So we likewise affirm adjudication under subsection 14.

Second, clear and convincing evidence likewise supports adjudication under paragraphs "a," "b," and "d" of subsection 16. *See* Iowa Code § 232.96A(16)(a) (allowing adjudication when a parent "[u]nlawfully uses, possesses, manufactures, cultivates, or distributes a dangerous substance in the presence of the child"); *id.* § 232.96A(16)(b) (allowing adjudication when a parent "[k]nowingly allows the use, possession, manufacture, cultivation, or distribution of a dangerous substance by another person in the presence of the child"); *id.* § 232.96A(16)(d) (allowing adjudication when a parent "[u]nlawfully uses, possesses, manufactures, cultivates, or distributes a dangerous substance . . . in the child's home, on the premises, or in a motor vehicle located on the premises"). The daughter's statements—in particular her ability to describe her mother's behavioral changes while using—support finding the mother has used in her daughter's presence. The mother's fiancé also lives in the home and admitted to using methamphetamine with the mother, including using one night before they were caring for the daughter the next morning. And the fiancé was driving during both traffic stops—where methamphetamine, marijuana, and pipes were discovered in the mother's purse and inside the vehicle—and the car involved was parked outside the home when social workers visited. Thus, we affirm the daughter's adjudication under paragraphs "a," "b," and "d" of subsection 16.

### III. Removal

The mother also seeks to appeal the necessity of both the initial ex parte removal and the continued removal after the dispositional hearing. As for the ex parte removal, that issue is moot. *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994). The juvenile court confirmed removal was appropriate both in its

adjudicatory and dispositional orders. So "[a]ny error committed in granting the temporary ex parte order cannot now be remedied." *Id.*

As for the daughter's continued removal following the dispositional hearing, the mother disputes that removal is the least restrictive disposition. *See* Iowa Code § 232.99(4). But we share the juvenile court's concerns about her ongoing sobriety. For starters, the mother has a history of relapsing after periods of sobriety, and the evidence is mixed on the mother's current commitment to sobriety—she reported feeling she could use some impairing substances recreationally without struggling or becoming addicted. We also share the court's concerns with the mother's refusal to submit to patch tests—she could not identify what kind of adhesive she was allergic to, has produced no medical evaluations proving the allergy, and rebuffed the suggestion that she at least try wearing the patch to see if the particular adhesive would agitate her skin. That refusal, coupled with the rejected urine analysis shortly before the dispositional hearing, suggests further proof of consistent sobriety is needed before the daughter is returned to her care. *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) (explaining "[a] parent's methamphetamine use, in itself, creates a dangerous environment for children").

We are sympathetic to the mother's desire to have her daughter returned to her care, and we are encouraged by their positive visits thus far. But we must put the daughter's best interest at the forefront. And so, we agree with the juvenile court that, to ensure a safe environment for the daughter, additional time to show meaningful sobriety is necessary.

**AFFIRMED.**