# IN THE COURT OF APPEALS OF IOWA

No. 25-1311
Filed October 29, 2025

**IN THE INTEREST OF M.P., H.P., C.P., and A.P.,**
**Minor Children,**

**K.P., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Sac County, Joseph L. Tofilon, (temporary removal hearing) and Joseph McCarville (dispositional hearing), Judges.

　　　A mother challenges the juvenile court's removal of her four children. **AFFIRMED.**

　　　Mark J. Rasmussen of Rasmussen Law Office, Jefferson, for appellant mother.

　　　Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

　　　Kelsea Hawley of Minnich, Comito & Neu P.C., Carroll, attorney and guardian ad litem for minor children.

　　　Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**GREER, Judge.**

A mother appeals from a dispositional order in child-in-need-of-assistance (CINA) proceedings. She challenges the removal of her four children: M.P. (born 2018), H.P. (born 2021), C.P. (born 2022), and A.P. (born 2024). On appeal the mother argues (1) the juvenile court erred in removing the children under the temporary removal order, and (2) the juvenile court erred in continuing removal at the time of the dispositional hearing. We affirm.

## I. Background Facts and Prior Proceedings.

In May 2025, the children were removed from the custody of both of their parents.[1] The family's involvement with the Iowa Department of Health and Human Services (HHS) began after a domestic dispute between the mother and father in December 2024 and allegations of the father using methamphetamine in the home.[2] The father was arrested, a no contact order was put in place, and the father has remained out of the home since and had fully supervised interactions with the children.

In January 2025, voluntary services were offered to the family, and the children still resided with their mother. Nicole Meyer, a child protective worker with HHS, testified that the mother at first refused to comply with those services. HHS required substance testing, and the mother's hair follicle test was positive for marijuana in January 2025. But, in March 2025, the mother's urine analysis tested negative for all substances. There was an allegation that the mother doctored the

---

[1] The father is in agreement with the removal and is not a party to this appeal.
[2] There was a report with HHS from 2022, alleging the two oldest children were left unattended on the roof of an apartment building for almost an hour, but that event is separate from the facts here.

test result, but the mother denied that allegation. The children continued to reside with the mother.

On May 14, someone contacted HHS and alleged that earlier in the month, the mother took the children to a party and she had become intoxicated and used marijuana to the point she could not meet the needs of her children. According to the report, the mother had left the children in soiled diapers and other persons had to intervene. During the party C.P. was allegedly handling a knife and alcohol until the items were removed by other adults.[3] The mother became so intoxicated by alcohol at the party that she was unable to drive herself and the children home, and someone else had to transport them. These allegations prompted a visit to the home by HHS workers that afternoon.[4]

Kristin Anderson, the case manager assigned to this case, arrived at the home with Meyer to discuss services with the mother. But the mother was not home. The night before, the mother had left her children in the care of her then-roommate and the roommate's boyfriend. After arriving at the home, Anderson and Meyer found the roommate was very intoxicated. Anderson wrote in her report that the children were "not being supervised by an appropriate adult." Meyer described the home as "filthy with old food, bottles with rotten milk, garbage, and

---

[3] The mother denies having used marijuana at the party and claims that she was unaware her child ever held a knife or alcohol.

[4] There was an additional incident reported that M.P. had left the home without the mother's knowledge. According to that report, the mother notified the school M.P. would not attend, but the child showed up to the school. But HHS rejected the claim because "none of the child's needs went unmet." Meyer testified that the eldest child, aged six, routinely told "the school that she gets herself up and dressed and breakfast and sometimes feeds her siblings before she goes to school because mom was sleeping."

bottles of alcohol accessible to the children. Additionally, there [were] many choking hazards on the floors." Meyer had to call the police to the home for their safety.

At the temporary removal hearing, Meyer testified that the roommate had a blood alcohol content of .370. Physical abuse was alleged against the roommate because she had grabbed H.P. in such a way that she caused scratches and marks on the child. On top of that behavior, the roommate assaulted a police officer that had arrived to intervene in front of the children. Also, partly because of her intoxication, the roommate fell over while holding one-year-old A.P., and the child began to cry. The roommate's boyfriend, the only other adult there, was also intoxicated with a blood alcohol content of .137. Meyer testified that the boyfriend reported he went there with the intent "to party and get drunk that night."

The children were removed from the home and placed with their paternal grandparents where the father also resides, although his visits were to be supervised. At the May removal hearing, Anderson reported the children were "thriving" and they were reaching developmental milestones they had not achieved while in their mother's care. During the same hearing the mother denied the allegations regarding her behavior at the party and testified that she did not know the caregivers would become intoxicated. The juvenile court found the mother to be an uncredible witness. On June 27, the children were adjudicated to be CINA under Iowa Code section 232.96A(3)(b) (2025).

After removal, the mother's visitation schedule with the children was two two-hour long sessions every week. The mother has moved to a new town where she lives with her paramour, who has an eight-year-old son. The two became

romantically involved in approximately April 2025. HHS has not had chance to meet the paramour yet.

During the timeframe around the removal, the parents' marriage dissolution was pending before the court, and there was an ongoing custody dispute. In July the mother moved for concurrent jurisdiction so that the district court could determine custody of the children. On that same July day, there was a dispositional hearing in the juvenile cases. Anderson testified to some good strides the mother had made; the mother's new home did not have any safety concerns, and the mother had been attending group therapy. But Anderson also testified to the concerns she still had and why she could not recommend that the court end the removal:

> I'd like to see more follow-through and consistency during visits. There's concerns that she struggles to keep track of all of the children at one time and relies on the [Family Centered Services] staff to support and help with all the children. She doesn't have a car that is large enough to transport all the children. I'd really like her to get started on that trauma therapy, that [eye movement, desensitization and reprocessing (EMDR)] therapy to process her trauma. I'd like to see her continue to show employment, work on a budget to show that she is able to financially provide for herself and children.

The county attorney and children's guardian ad litem also agreed that removal should continue. After the dispositional hearing, the juvenile court ordered that removal should continue and the children should remain in relative placement with the paternal grandmother. The juvenile court denied the parents' requests for concurrent jurisdiction, noting the case was too new. The mother appeals.

## II.     Standard of Review.

"We review CINA proceedings de novo."  *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).  We give weight to the juvenile court's findings of fact, though we are not bound by them.  *Id.*

## III.    Temporary Removal.

The mother first asserts that the juvenile court erred when it granted temporary removal on May 15, 2025.  The State maintains that any issue related to the initial removal order was "rendered moot by the subsequent entry of a dispositional order."  We agree with the State that this is not a claim for which we can grant relief as the dispositional order on July 30, 2025, made the claims over the temporary removal order moot.  *In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) (holding any error with a temporary removal order could not be remedied after the "[c]ustody of the child was placed with [H]HS under the dispositional order").  We will not consider an issue if it is moot.  *See Watts v. State*, 456 N.W.2d 683, 683 (Iowa Ct. App. 1990).  So, we turn directly to the mother's surviving claim that the juvenile court erred in continuing removal of the children at time of the dispositional hearing.

## IV.    Dispositional Order.

On appeal the mother asserts that the children should not have been removed under Iowa Code section 232.102 because "the State failed to establish the elements for the continued removal of the children from the mother."  Upon conclusion of a dispositional hearing the juvenile "court shall make the least restrictive disposition appropriate considering all the circumstances of the case."  Iowa Code § 232.99(4).  From least to most restrictive, the court is permitted to

enter an order: suspending judgment and continuing the proceedings for up to twelve months, *id.* § 232.100; allowing the parent to retain custody subject to specific terms and conditions, *id.* § 232.101; appointing a guardian, *id.* § 232.101A; or transferring legal custody of the children to HHS, *id.* § 232.102. The juvenile court can only transfer (or keep) the children out of parental custody if it finds by clear and convincing evidence that the "child[ren] cannot be protected from physical abuse without transfer of custody" or "from some harm which would justify the adjudication of the child[ren] as a [CINA] and an adequate placement is available." *Id.* § 232.102(4)(a)(1)–(2). Our primary concern in CINA proceedings is the children's best interests. *J.S.*, 846 N.W.2d at 40.

Here, the juvenile court chose to transfer legal custody from both of the parents and found that continued removal was in the children's best interests. The mother contends she has established "that she would be able to properly care for and supervise her children." Like the juvenile court, we commend the mother for the improvements she has made. Yet, on our de novo review, we also agree with the juvenile court that it is just "too early" to return the children to their mother's care. *See In re K.S.*, No. 25-0839, 2025 WL 2238592, at *3 (Iowa Ct. App. Aug. 6, 2025) (affirming continued removal after a dispositional hearing when "the mother ha[d] only just begun to engage in services" even though the mother had shown "recent progress and positive visits.").

The mother only started participating in services after removal of the children, even though those services had been offered to her for months prior. At

the time of the dispositional hearing, the mother was newly sober[5] and undergoing therapy. To her credit, the mother had not had a positive drug test since January, and the case manager testified at the dispositional hearing that she had no concerns over the mother's alcohol or drug usage. But the mother had just scheduled a new mental health evaluation and was still needing trauma therapy. And the case manager described concerns about the mother managing all four children at once without the help of HHS staff. Additionally, the mother had recently moved in with her paramour, and HHS workers had not yet performed any necessary checks on him. The mother had only freshly gained employment, and the case manager wanted to see more longevity in her improvements before recommending the end of removal. With these concerns still unresolved, we affirm the juvenile court's disposition order given the potential risk for adjudicatory harm if the children return to the mother at this time.

**V.     Conclusion.**

We conclude that the mother's challenge of the temporary removal order is moot. We affirm the juvenile court's dispositional order that confirmed the children as children in need of assistance, continued the removal, and transferred legal custody of the children to HHS.

**AFFIRMED.**

---

[5] The last reported alcohol use was in June 2025.