# IN THE COURT OF APPEALS OF IOWA

---

No. 25-1788
Filed April 15, 2026

---

**In the Interest of A.R. and M.R., Minor Children,**

**A.R., Mother,**
Appellant.

---

Appeal from the Iowa District Court for Polk County,
The Honorable Susan Cox, Judge.

---

**AFFIRMED**

---

Lisa A. Allison of Youth Law Center, Des Moines, attorney for
appellant mother.

Brenna Bird, Attorney General, and Mackenize L. Moran, Assistant
Attorney General, attorneys for appellee State.

Teresa M. Pope of Pope Law PLLC, Des Moines, attorney and
guardian ad litem for minor children.

---

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Langholz, J.

1

**LANGHOLZ, Judge.**

A mother appeals the juvenile court's order terminating her parental rights to her then-one-year-old son and two-year-old daughter. [1] She challenges the statutory grounds for termination, the court's denial of her request for six more months to work toward reunification, and an earlier order in the child-in-need-of-assistance proceedings modifying disposition to remove both children from the mother's custody for placement with fictive kin or a foster family.

On our de novo review, we agree with the juvenile court that despite the mother's progress before the January 2025 removal, her conduct over the next nine months showed that the children could not be returned to her custody at the time of the termination hearing. It was not in the children's best interests to delay permanency with a six-month extension to work toward reunification. And the mother's challenge to the earlier modification order became moot after entry of the termination order, so we cannot consider it. We thus affirm the termination of the mother's parental rights.

## I. Background Facts and Proceedings

In January 2023, a newborn daughter was removed from the custody of her twenty-year-old mother days after her birth because both tested positive for amphetamine and methamphetamine. The daughter was placed with a foster family and eventually adjudicated as a child in need of assistance. Early on the mother was granted supervised visits and performed well in some instances but missed some visits and cut others short. The mother's

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id*. §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

substance-use issues continued—she tested positive for methamphetamine and THC in March, all that plus cocaine in May, and THC again in June. Because of the mother's lack of progress with her substance-use issues, in July the Iowa Department of Health and Human Services ("HHS") recommended that the juvenile court tentatively schedule a termination hearing.

But the mother improved her situation. She began participating in residential substance-use treatment at House of Mercy while also engaging in mental-health treatment and other services. And in August, after finding "The mother is working with House of Mercy and doing a great job!!!!!," the court ordered a six-month extension for permanency "to allow the mother an opportunity to continue fully participating in services at the House of Mercy." Visitation gradually increased. And the mother mostly progressed, with occasional setbacks—including a relapse using marijuana on Christmas Day 2023 while pregnant with her son.

The son was born in May 2024. At his birth, the mother and son were both negative for all substances tested. The son was adjudicated in need of assistance but stayed in the mother's custody at the House of Mercy. After even more progress, the daughter was also returned to the mother in late September. And by early December, staff at the House of Mercy started conversations with the mother to plan for a potential discharge in six months.

Unfortunately, things took a turn for the worse later that month. On Christmas Eve, the mother visited her family with the children and drank a lot of alcohol. She ended up in an argument with her sister resulting in her sister giving her a black eye and split lip. The mother returned late to the House of Mercy, still intoxicated, and required assistance from the staff to help with the children and to check on her throughout the night.

The next morning, the mother accidentally stepped on the daughter's foot. A trip to the emergency room followed—the foot was broken. The mother reported the incidents and worked with the House of Mercy and HHS on a plan forward. She also admitted that she was having trouble caring for the daughter and asked the foster family to take the daughter back temporarily while she worked on herself and focused on caring for the son.

Despite opposition from HHS and the guardian ad litem, in early January 2025, the juvenile court modified disposition to remove both the daughter and the son from the mother's custody because of the Christmas incidents. This was the first time the eight-month-old son was removed.

The mother was soon discharged from House of Mercy for vaping with nicotine. She then cycled through multiple living arrangements, twice being asked to leave programs because of her relapsed drinking behavior. From mid-April to mid-May, she successfully participated in an in-patient substance-use treatment. But then after returning to another recovery housing program in June, she was again asked to leave because of an incident drinking and hitting staff. The mother's housing was less stable after this— yet by the time of the termination hearing she reported that she had an apartment with a name on the lease and was doing cleaning work.

As the mother regressed, she began to focus more on the son. She asked for visits to be only with him. And because the daughter was also having behavioral issues after the visits, in mid-July the court ordered visits between the daughter and mother to stop. And in August, the juvenile court changed the permanency goal to termination of parental rights for both children.

Meanwhile, the children were doing well with their foster family— especially after the daughter's visits with the mother stopped. The daughter

has been with this same family for all but nine months of her life; the son for the entire eight months of his removal. And the family, as a concurrent plan for the children, hopes to adopt them.

After the State petitioned to terminate the mother's parental rights to both children, the juvenile court held an hour-long termination hearing in September 2025. The mother did not testify or present any other evidence—only the HHS worker testified. The guardian ad litem supported termination. And at the close of the hearing, the court ruled from the bench terminating the mother's parental rights to both children.[2]

In its written ruling two weeks later, the court summed up its reasoning for finding statutory grounds for termination under paragraph "h" of Iowa Code section 232.116(1):

> As to the mother, she continues to struggle with substance abuse, mental health, unsafe relationships, unsafe parenting, and lack of participation in services. She is unable to safely care for the children and the court does not believe it is reasonably likely that will occur within the next six months. Despite two and a half years of services (the children's entire lifetime), the mother remains unsafe to parent the children.

The mother now appeals.[3]

---

[2] The court explained, "The reason I'm telling you this in court today is because I'm worried about you, and I wanted you to hear it from me and to be in a safe location where you could talk to your attorney and have access to other support workers and not just be waiting for the decision." But almost immediately after announcing the decision the court had to stop, stating for the record, "So she's strongly disagreeing with what I have to say, looks like she's getting her stuff together."

[3] The court also terminated the parental rights of the fathers of both children. But neither father appeals.

## II.    Statutory Grounds for Termination

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show termination is in the best interests of the children. *Id.* And third, the parent has the burden to show whether a discretionary exception applies that should preclude termination. *Id.* We need not address any steps not challenged by a parent. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). And here the mother challenges only the first step. So we focus our analysis there. We review a termination decision de novo, giving "respectful consideration" to the juvenile court's factual findings, especially when based on credibility determinations. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The juvenile court terminated the mother's parental rights under paragraph "h" of Iowa Code section 232.116(1). The mother concedes that the State proved the first three elements of that ground for termination: both children were under the age of four, were adjudicated in need of assistance, and had been out of the mother's physical custody for the last six consecutive months before termination. *See* Iowa Code § 232.116(1)(h)(1)–(3). She argues only that the State failed to prove the last element by clear and convincing evidence—that the children "cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." Iowa Code § 232.116(1)(h)(4).

We agree with the juvenile court that the State has met its burden to prove that the children "could not be safely returned to [the mother's] custody" at the time of the hearing. *In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018); *see also In re T.W.*, No. 20-0145, 2020 WL 1881115, at *1–3 (Iowa Ct. App. Apr. 15, 2020). The mother's alcohol use, refusal to participate in

6

mental-health treatment, failure to progress beyond supervised visitation with her son, and nonexistent visitation with the daughter all show that both children could not be safely returned at the time of the September 2025 termination hearing.

Although the mother had made remarkable progress on her substance-use issues over the twelve months of 2024, she relapsed in drinking alcohol to intoxication on Christmas Eve 2024. The next morning, she stepped on her daughter's foot, breaking it and leading to the removal of both children. This started what the HHS worker aptly describe as a "downward spiral." She was discharged from the House of Mercy because of violating its rules prohibiting nicotine vaping in early January. Three times over the next several months she was forced to leave her treatment or housing because of her drinking—even after successfully completing a month-long inpatient treatment program. And the final time she was asked to leave a program in June she was so intoxicated that she was "stumbling around the hall," hitting staff, disturbing her roommates, and unable to remember any of it.

She did wear an alcohol-monitoring device for several weeks in February and again for several weeks in August with only one confirmed detection of alcohol in mid-August—which the mother claimed was because of an environmental exposure from cleaning up alcohol while working. But as of the hearing, she had not followed through with another substance-use evaluation or treatment and she failed to participate in a requested drug screen just days before the hearing.

The mother similarly failed to consistently participate in mental-health therapy after leaving the House of Mercy. She reengaged somewhat in July, attending two of her three scheduled weekly sessions but then showed up for only one more before the mid-September hearing.

Visits between the mother and the son had not progressed beyond supervised visitation. And the provider supervising visits reported concerns about the mother paying attention to her phone rather than her son—twice resulting in minor injuries and other times causing the provider to play with the son for extended parts of the visits while the mother was on her phone. The mother also did not consistently make the visits—sometimes unexpectedly failing to show up at the visit location after her son was already there waiting.

What's more, in June, the mother began asking to stop visits with the daughter so she could focus on the son. The daughter also asked for visits to stop. And the foster family reported many behavioral issues with the daughter after her visits with the mother. So the visits with the daughter were stopped entirely in mid-July.

Bottom line, neither the daughter nor the son could be safely returned to the mother's custody in September 2025. We thus affirm the court's finding that grounds existed for termination of the mother's parental rights to both children under paragraph "h" of Iowa Code section 232.116(1).

## III.    Additional Time for Reunification

The mother next argues that the juvenile court should have given her six more months to work toward reunification rather than terminating her rights.[4] *See* Iowa Code §§ 232.117(5), 232.104(2)(b). A court may give more

---

[4] It would have been preferable for the mother to state this as a distinct issue with its own heading, legal authority, and argument in her petition on appeal to avoid the risk of waiving the issue. *See In re L.A.*, 20 N.W.3d 529, 534 n.2 (Iowa Ct. App. 2025). But her extensive argument on the point, including citation to a dissenting opinion supporting her argument, is more than a stray mention. *Cf. In re D.P.*, No. 25-0896, 2025 WL 2538974, at *4 n.3 (Iowa Ct. App. Sep. 4, 2025). So we err on the side of reaching the issue's merits.

time "only if the need for removal 'will no longer exist at the end of the additional six-month period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)). On our de novo review, we agree with the juvenile court that the need for removal will still exist in six months for both children.

The daughter had been out of the mother's custody for all but three months of her thirty-two-month life as of the termination hearing. The mother and daughter have had no visits since mid-July—both because of behavioral issues for the daughter after visits and the mother's request to focus on reunification with the son. And while the visits were still occurring—which had not progressed beyond fully supervised—the mother often gave most of her attention to the son, and daughter began asking not to attend. So even setting aside the other serious safety concerns, there is no reasonable basis for finding that the daughter could be returned to the mother after six more months.

The son presents a closer call. We understand the mother's desire to be given another chance after her successful parenting of the son for eight months and her frustration at the son's removal over the objection of the GAL and HHS. But during the eight months since that removal—half the son's life—the mother's conduct has not shown any prospect that she will be able to address her ongoing substance-use, mental-health, and parenting concerns in the next six months. So this more recent conduct of the mother leads us to the same conclusion as the juvenile court—the son could not be safely returned.

These children need safety, permanency, and stability. *See In re R.M.-V.*, 13 N.W.3d 620, 626 (Iowa Ct. App. 2024) ("[W]e cannot deprive a child of permanency after the State has proved a ground for

termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (cleaned up)). We thus affirm the court's denial of the mother's request for more time and the termination of her parental rights to both children.

## IV.    Modification of Disposition to Remove the Children

The mother also challenges the juvenile court's January 2025 order in the child-in-need-of-assistance proceedings that modified disposition to remove both children from the mother's custody for placement with fictive kin or a foster family. But whatever the merits of the mother's arguments, we cannot consider them now because the issue became moot once the court terminated her parental rights. *See In re A.B.*, No. 21-1470, 2022 WL 469407, at *3 (Iowa Ct. App. Feb. 16, 2022); *In re X.M.*, No. 22-1533, 2022 WL 17481863, at *3 n.1 (Iowa Ct. App. Dec. 7, 2022); *cf. In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) (holding that challenges to a removal order were moot after the court entered a later order keeping the children removed, reasoning that an appellate court "cannot go back in time and restore custody based on alleged errors in the initial removal order").

**AFFIRMED.**